PATRONS' MUTUAL FIRE INSURANCE CO. OF MICHIGAN v. HOLDEN.

1. ACCOUNTING—EQUITY—FRAUD—FIDUCIARY RELATIONS.
   Equity may compel an accounting, where fraud is charged or fiduciary relations exist.

2. EQUITY—MULTIFARIOUSNESS—INSURANCE.
   A bill by an insurance company against its former secretary and others for an accounting, charging both fraud and the existence of fiduciary relations, was not multifarious, where it had but one primary object, to reach funds misapplied by or through the secretary.

3. SAME—PARTIES—CORPORATIONS—MISJOINDER.
   In a suit by an insurance company against its former secretary and others for an accounting, where misappropriation of funds through an agency of which the secretary was a member was charged, the other members of the agency were properly joined as defendants.

4. CORPORATIONS—WHEN OFFICER MAY DEAL WITH CORPORATION.
   An officer of a corporation may deal with the corporation if his acts are open and fair and known to the directors and stockholders.

5. SAME—BURDEN IS ON OFFICER TO SHOW VALIDITY OF CONTRACT WITH CORPORATION.
   The burden of showing the validity of a contract between a corporation and its officer or director, and the fairness and

honesty of his dealings with the corporation, is on said officer or director.

6. INSURANCE—CORPORATIONS—FAIRNESS OF CONTRACT NOT SHOWN.
The fairness of a contract between an insurance company and an agency of which its secretary, who negotiated the contract, was a member, giving to the agency perpetual right to renewals on insurance business it contributed on the same basis as for writing the original business, *held*, not substantiated by the testimony.

7. SAME—RATIFICATION OF CONTRACT NOT SHOWN.
The ratification by the directors of an insurance company of a contract negotiated by its secretary with an agency of which he was a member, giving to the agency the perpetual right to renewals on insurance business it contributed, on the same basis as for writing the original business, *held*, not shown by the evidence.

8. SAME—ORAL CONTRACT NOT SHOWN TO BE FAIR IS INVALID.
An oral contract made by the secretary of an insurance company with an agency of which he was a member, which was not shown to be fair, and which was not authorized by the board of directors or stockholders of the company, was invalid.

9. SAME—RATIFICATION—BURDEN OF PROOF.
An agency claiming that a contract between it and an insurance company, originally invalid because negotiated by the company's secretary while he was a member of the agency, was ratified by the company after the secretary's withdrawal from the agency, has the burden of showing that it was ratified by a quorum of disinterested directors with full knowledge of its character and purport.

10. SAME—DAMAGES—CANCELLATION—REASONABLE COMPENSATION.
Although an agency is not entitled to damages for the cancellation of its contract with an insurance company because it was never ratified by the latter's directors, the agency is entitled to reasonable compensation for services it performed for the company in connection therewith.

11. SAME—ACCOUNTING—ALLOWANCE FOR EXPENSES.
Where the commissions and fees allowed to the agency constituted fair compensation for the business written by it, reimbursement for sums claimed to have been expended by it in

excess thereof, in support of which there was no acceptable testimony, *held,* properly disallowed.

12. Same—Commissions on Assessments Voluntarily Paid Not Allowable.

Although the agency would be entitled to reasonable compensation for services performed by it in collecting assessments levied upon its members by the company, the agency would not be entitled to commissions on assessments voluntarily paid to the company before there was any necessity to employ collectors.

13. Same—Agency Properly Charged With Full Amount Collectible Where Frank Disclosure Not Made—Commissions on Collections Deducted.

Where the agency collected some stipulated damages belonging to the company, but failed to make frank disclosure or to keep proper records of the amount, the court below properly charged it with the full amount collectible; however, a collection fee of 25 per cent. should have been allowed the agency, and deducted from the amount charged against it.

Appeal from Ingham; Collingwood (Charles B.), J. Submitted October 23, 1928. (Docket No. 111, Calendar No. 33,950.) Decided January 7, 1929.

Bill by the Patrons' Mutual Fire Insurance Company of Michigan against Ellsworth A. Holden and others for an accounting. From a decree for plaintiff, defendants appeal. Modified and affirmed.

*Kinnane & Leibrand,* for plaintiff.

*Thomas, Shields & Silsbee (Clayton F. Jennings,* of counsel), for defendants.

Fead, J. From its organization in 1901 to September, 1925, E. A. Holden was secretary and treasurer of plaintiff company, had general management subject to the approval of the president, possessed the

confidence of the directors, and was the dominating figure in its affairs. The company wrote farm fire insurance, designating the risks as classes 1 and 2. In 1920, under a law of 1919, it began to write mercantile and other risks as class 3, Harold P. Holden was made superintendent of agents, a force of solicitors and reviewers of risks was built up, and approximately $3,000,000 of class 3 business was written.

About the beginning of 1921, E. A. Holden, his son Harold, and his brother Berto organized an insurance partnership under the name of Holden Agency, with Harold as active manager. As secretary of plaintiff, E. A. Holden made a verbal arrangement with Harold by which the agency took over the soliciting and writing of class 3 insurance for the company on a commission basis of 25 per cent. of premiums and one-half of membership fees on business produced by it. Under order of E. A. Holden, the class 3 insurance then in force or in process of closing was turned over to the agency and it received commissions approximating 5 per cent. thereon.

In October, 1922, the State insurance department, after report by its examiner Treanor, criticized the agency arrangement on the ground that there was no contract between the company and the agency, and because E. A. Holden, as secretary of plaintiff, was dealing with himself as a member of the partnership. E. A. Holden, for plaintiff, and Harold, for the agency, then executed a written contract which they dated November 1st. On November 20, 1922, the board of directors of plaintiff, after considering the Treanor report and hearing E. A. Holden's statement that he had withdrawn from the agency, adopted the following resolution:

"Moved and unanimously carried that this board confirm and approve of the arrangement and con-

tract with the Holden Agency for producing class 3 business and the giving said agency 25% of all receipts on class 3 business other than policy and membership fees and 50% of all such fees, copy of which contract is hereto attached.''

The agency continued to write class 3 business until 1925, when the State insurance commissioner expressed the opinion that the agency was sapping the finances of the company, and, at a meeting in September, plaintiff's board of directors, after reading the contract. declared it canceled and notified the agency.

Shortly thereafter, E. A. Holden resigned as secretary, and audit was made of his accounts, and, after conferences looking to an adjustment, this suit was commenced to require him and the members of the Holden Agency to account for a large number of items which plaintiff claimed had been misappropriated by them or some of them. At the hearing, plaintiff withdrew some of its charges; the chancellor allowed some and rejected others. Defendants denied misappropriations, and the Holden Agency claimed damages of over $40,000 for cancellation of contract, on account of being deprived of commissions on business written during the period provided in the contract for notice of cancellation and also for loss of commissions on future renewals.

Defendants made preliminary motion to dismiss the bill on the grounds that it was multifarious, there was misjoinder of defendants, and plaintiff had an adequate remedy at law. Equity may compel an accounting, where fraud is charged or fiduciary relations exist. Both were charged. There was no misjoinder. *Michigan National Bank* v. *Hill,* 181 Mich. 7. The bill had one primary object, to reach funds misappropriated by or through E. A. Holden. The motion was properly denied.

The issue around which many of the items in dispute revolve is the validity of the contract between plaintiff and the Holden Agency. In addition to provisions for payment of commissions and fees, the written contract contained the following:

"The agency shall have exclusive right to all renewals on business it contributes to the company.

"This contract may be canceled at any time as regards new business by either party hereto by giving ninety days' notice.

"This is the oral contract or mutual understanding under which the company and the agency have been operating for nearly two years and now for the first time put into writing."

Defendants contend that this contract was ratified by the resolution of the board of directors on November 20, 1922. Plaintiff claims that the clause regarding renewals was not known to the directors, and the contract was not ratified. One director testified that a contract was read at the meeting of ratification. The others denied this. No lay director actually read the contract himself at that time nor until after difficulty arose. The effect here claimed for it was not explained to them.

An officer of a corporation may deal with the corporation if his acts are open and fair and known to the directors and stockholders. *Barnes* v. *Spencer & Barnes Co.*, 162 Mich. 509; *Quinn* v. *Manufacturing Co.*, 201 Mich. 664.

"The rule obtaining in a majority of jurisdictions is that a director may deal or contract with the corporation where he acts in good faith and the corporation is represented by a quorum of disinterested directors or other independent officers or agents authorized to contract for it. Such a contract is not void *per se* nor is it voidable, except for unfairness

or fraud, for which it will be closely scrutinized in equity. Similarly an officer may deal with the corporation if his acts are open and fair and known to the directors and stockholders; but all dealings between an officer of a corporation and the board of directors must be scrutinized carefully, and to bind the stockholders must bear evidence of having been in the interests of the corporation. * * *

"The burden of showing the validity of the contract and the fairness and honesty of his dealings with the corporation is on the director, officer or agent.

"The contract is valid and unassailable when it has been authorized, consented to, or ratified, by the body of the stockholders, or by all the stockholders, or by all the stockholders and directors. Also the contract is capable of being ratified by the lawful action of the board of directors expressed by a vote taken by a disinterested quorum." 14A C. J. pp. 118–120.

Defendants contend that the contract gave the Holden Agency perpetual right to commissions on renewals of all business it contributed to the company; that it could not be canceled as to such business; that this provision was fair and in accordance with the usual practice of insurance agencies.

They did not substantiate the claim of fairness by the testimony of any witnesses familiar with the insurance business other than themselves. Without such testimony, it could hardly be held reasonable that an agency have a perpetual right to renewals; nor to any renewals, after termination of the contract, on the same basis as for writing the original business.

The resolution of ratification contained no indication that the contract covered perpetual renewal right. The evidence is convincing that the directors of plaintiff did not understand that this provision

was in the contract when they adopted the resolution in November, 1922. The fact that the first agreement was in parol, made by the secretary alone with his own firm, and that the subsequent written contract was executed by him for the company in advance of the meeting of the directors and was made with his close relatives and partners, are causes of grave suspicion. If the deal were fair, an officer of a corporation under such circumstances ordinarily would have submitted the whole matter to the directors for negotiation, or at least have insisted upon participation by disinterested officers with authority. The written contract was so drafted that its full effect might easily escape notice, especially of men who, like directors of plaintiff, were not versed in such affairs and had confidence in their secretary. The reading of the contract, if it was read at the meeting, would not have been likely to convey to the hearers the purport of the perpetual renewal clause. Nor did the secretary perform his duty in merely reading the contract. He owed the duty of complete frankness and disclosure in fully informing the directors not only of the words of the contract but of precisely what they meant. It is hardly conceivable that they would have approved the right to renewals after cancellation of the contract, without some limitation. The contract was not authorized nor ratified by the directors of plaintiff company in the form written. Their ratification did not go beyond the particular specifications set out in the resolution.

The original oral contract, if of the substance of the written agreement, was invalid because made by the secretary of plaintiff with a partnership of which he was a member, it was not shown to have been fair, and it was not authorized by the board of directors

or stockholders. The original contract having been invalid, the withdrawal of E. A. Holden from the agency, assuming the withdrawal was actual and effective, did not constitute the other members of the agency innocent third parties dealing at arm's length with the corporation. To rely upon ratification of the contract, it was incumbent upon them to know that it was ratified by a quorum of disinterested directors with full knowledge of its character and purport. The written contract was of no effect to bind plaintiff because by its terms it was merely written evidence of the void oral agreement, and, as a new engagement, it was not ratified by the board of directors with knowledge of its contents and effect if indeed, under the circumstances, the board had power to ratify. The Holden Agency is not entitled to damages for its cancellation, but is entitled to reasonable compensation for services it performed for plaintiff in connection therewith.

Defendants ask reimbursement on the *quantum meruit* for over $23,000 which they claim they expended in excess of commissions received by them, to write the insurance before cancellation of the contract. The computation was given by Harold P. Holden in a lump sum without substantiation by books or records and without specifications. There was no acceptable testimony of the value of the services in excess of receipts. We are particularly inclined to hold that the commissions and fees constituted fair compensation for business written by the agency because it was so conceded by plaintiff, and the testimony leaves an abiding impression that such was the original agreement, as disclosed to and understood by the directors, and that the insertion of the permanent renewal clause in the written contract was done and concealed from them under plan

of E. A. Holden and Harold to secure an advantage over the corporation. The allowance by the chancellor of the agreed commissions and membership fees for work done by the Holden Agency in writing class 3 business is approved.

The record in the case is exhaustive, the accounts complicated, the items in dispute numerous, and no good purpose would be served in detailed discussion of them. They will be dealt with briefly.

In connection with collection of delinquent assessments from 1915 to 1917, E. A. Holden made an agreement with an attorney to collect on a *per diem* basis, represented that the agreement was for percentage and had returns made to the company on the latter basis. While the applicable rule would charge Holden with all sums not properly accounted for, we appreciate the difficulty of explaining ancient matters, the accounts were not entirely clear, and we think the court reached a fair result in charging him with amounts traced directly to him, in the sum of $1,667.34.

On February 10, 1922, E. A. Holden received payment from the company of $150 for depreciation and use of his car by W. H. Keddy on Holden Agency business. The allowance of this item is approved but it should run against E. A. Holden personally.

The other items affecting E. A. Holden personally and not the agency are conceded debit of $58.60 and credit of $2,362.85.

Items of $13,765.31, $365.61 and $83.85 are conceded credits to plaintiff in agency transactions.

Defendants did not show that their charge of 5 per cent. for keeping accounts of insurance written by plaintiff's employees in 1921 was reasonable, and allowance of item of $1,241.11 to plaintiff is approved.

No testimony that membership fees on policies written by plaintiff's agents in 1921 were retained by Holden Agency was pointed out by plaintiff's counsel nor discovered in the record. The item of $618 allowed plaintiff should be stricken.

At a June, 1923, meeting of the board of directors, a special assessment of $90,000 was ordered, $43,128.08 was voluntarily paid to plaintiff before October 10th, and $36,444.04 was collected by the Holden Agency or voluntarily paid to the company. The board did not authorize the employment of the agency to make the collection. But shortly thereafter, E. A. Holden, H. E. Straight, director of plaintiff and an employee of the agency, and Harold Holden made a verbal arrangement by which the Holden Agency should collect the assessments and return to plaintiff 75 per cent. of the original amounts, nothing being said about stipulated damages. Defendants claimed that President Moore participated in the agreement. Moore denied this. Whether true or not, Moore knew the agency was collecting. In July a meeting of a quorum of the board was had, the special assessment discussed, arrangements made for a vigorous campaign for collection by the company, but the claimed agreement with the Holden Agency was not presented to the board, not ratified, and several members did not know of it, while others had heard that the agency was to collect and understood it was to receive 25 per cent. of the amounts it actually collected. In a letter to the policy holders, E. A. Holden represented that the duty of collecting was upon him, and the whole reserve belonged to them. As payments came to the company they were turned over to the agency, which deducted 25 per cent. and returned the balance to the company. To permit the agency commission on

assessments voluntarily paid to the company before there was any necessity to employ collectors, under an arrangement so made, would be a fraud upon the policy holders. The agency would be entitled to reasonable compensation for the services it performed. Its claim of great expense in excess of receipts was not substantiated by the production of books or records nor by specifications capable of appraisal. The allowance to plaintiff of item of $10,782.02, retained by Holden Agency on collections made by the company before October 10th, is approved.

In connection with such special assessment the Holden Agency collected some stipulated damages. There was nothing in its claimed arrangement which gave it the right to retain such damages. The amount of such damages chargeable upon assessments collected by the agency, after damages accrued, would be $8,436.05. It is claimed, and doubtless true, that such amount was not collected because the validity of such damages was in doubt until the opinion of this court in *State Mutual Rodded Fire Ins. Co.* v. *Randall,* 232 Mich. 210 (41 A. L. R. 973). Defendants have not shown the amount actually collected, and the court had no recourse except to charge the full amount to them. The penalty of overcharge, if any, must be laid to failure of defendants to make frank disclosure or to keep proper records. However, the chancellor did not allow the agency collection fees on these damages, and we think they should be awarded. This item will be reduced 25 per cent.

The other items of the account have been given due consideration and the findings of the circuit court thereon are approved. Except as to the items

named as applying to E. A. Holden personally, the decree charging the misappropriations to all the defendants is approved.

The decree will be modified in accordance with this opinion and affirmed, with costs to plaintiff.

NORTH, C. J., and FELLOWS, WIEST, CLARK, MC-DONALD, POTTER, and SHARPE, JJ., concurred.