### BARTH v. BREDSHALL.

1. Corporations—Promoters—Trusts—Fiduciary Relation.
Promoter of company, like its directors, is deemed to sustain towards members of company and toward corporation, relation of trustee toward his *cestui que trust*.

2. Same—Secret Profit—Assignment of Lease.
Where lease was obtained by promoter incident to, and as part of, promotion of undertaking, promoter, who acts in fiduciary capacity, may not make secret profit on assigning said lease to corporation subsequently organized for purpose of carrying on contemplated enterprise.

3. Same.
Director who secured lease of additional land for use of corporation is not entitled to derive profit incident thereto at expense of corporation or its other stockholders, although assented to by board of directors which he dominated.

4. Same—Transactions Between Corporation and Directors Personally—Equity—Burden of Proof.
Transactions between corporation and its directors personally should be carefully scrutinized, and burden is always on directors in control of company to show that all their transactions · with it are fair and not in violation of trust relation which they sustain to company and its other stockholders. ¦

As to liability of promoter for secret profits, see annotation in 25 L. R. A. 92; 18 L. R. A. (N. S.) 1110..

5. SAME—STOCK OBTAINED BY DIRECTORS FOR NOTES CANCELED.

Corporate stock paying dividend of 24 per cent. per annum, obtained by directors in exchange for their unsecured notes at 6 per cent., was properly canceled by court below on complaint of stockholder who paid cash for his stock, where corporation never profited from said notes, they still being in its hands, and only payments made were dividends credited thereon.

Appeal.from Kent; Dunham (Major L.), J.  Submitted October 18, 1932.  (Docket No. 121, Calendar No. 36,111.)  Decided December 6, 1932.

Bill by Louis Barth against Alvin F. Bredshall and C. T. Smith to cancel certain shares of corporate stock and for an accounting.  Decree for plaintiff.  Defendants appeal.  Affirmed.

*Butterfield, Keeney & Amberg* and *Harry Shulsky,* for plaintiff.

*Warner, Norcross & Judd,* for defendants.

NORTH, J.  Plaintiff, by his bill in chancery, seeks to have certain shares of stock in the Banquet Barbecue, Inc., a Michigan corporation, canceled, to have an accounting for certain moneys received by Bredshall and Smith, herein called defendants, and for injunctive relief.  Upon hearing in the circuit court plaintiff had decree, and defendants have appealed.

It is plaintiff's claim that in May, 1927, the defendant Bredshall approached him in regard to becoming interested with Bredshall in a restaurant business.  These gentlemen had been interested in previous business ventures, always on the basis of investing equally and sharing equally.  Bredshall secured a lease of a desirable site for the res-

taurant for a term of four years with the privilege of extending the term by two periods of like duration. This lease in the first instance ran to Bredshall, but it was subsequently assigned to the Banquet Barbecue, Inc., upon its incorporation for the purpose of carrying on the contemplated enterprise. Early in the activities a small building was erected on the site, and subsequently a lease of additional ground was obtained from the lessor, and the building occupied by the restaurant business enlarged. This second lease also named Bredshall as the lessee, but it was later assigned to the corporation. When first organized (July 8, 1927), the authorized capital stock of the Banquet Barbecue was $10,000; but subsequently (March 28, 1928) was increased to $25,000, composed of common stock of the par value of $10 per share. When first incorporated, the stock, which ultimately went to plaintiff and Bredshall, was held by a trustee. Two other men joined in organizing the corporation. One of them, Mr. Frank Ferrell, was president of the company and held 10 shares of stock; the other, C. T. Smith, vice-president and secretary, held 250 shares.

It is plaintiff's claim that in the first instance Bredshall represented to him that the requirements of the enterprise would necessitate an investment of $2,000 by each of them; and that later, as the business was expanded and the building enlarged, that a further investment of $5,000 by each was required. Plaintiff advanced these respective amounts and received therefor $7,000 par value of the common stock of the company. Plaintiff, who was a physician actively engaged in the practice of his profession, asserts that by reason of his previous associations with Bredshall he had great confidence in

him, relied implicitly upon the representations made by him, and that it was mutually understood between them that Bredshall would look after plaintiff's interest. On this phase of the record plaintiff testified:

"He (Bredshall) asked me if I could go on the board. I replied I could not give it the time nor did I know anything about the restaurant. We have always worked on equal terms, you look after it for me, your interests and my interests are identical."

It seems as a result of the relationship above indicated between these men plaintiff paid little attention to the details of the restaurant business, notwithstanding his holdings in the corporation. He neither served as an official in connection with the corporation nor attended any of its stockholders' meetings. Plaintiff's contention is that it was understood between him and Bredshall that in this, as in previous ventures, they were to make the necessary investment in equal proportions and were to share equally in the ownership and profits of the enterprise. In the spring of 1929, because of certain facts which came to his knowledge, plaintiff employed an accountant to examine the books of the corporation and then for the first time, according to plaintiff's claim, he learned of the facts which gave rise to this litigation and which briefly outlined are as follows: The defendant Bredshall, in consideration of transferring to the corporation the first lease, had issued to him 250 shares of the company's stock. When the second lease was assigned, Bredshall was given $1,500 in stock and $1,000 in cash; and this latter sum he used to pay for $1,000 more stock at the par value. Thus for the two leases Bredshall obtained $5,000 in stock. Each of these transactions was authorized by action taken by the

board of directors composed of Bredshall, Ferrell, and Smith. But plaintiff alleges that the board of directors was under the control and domination of defendant Bredshall, and that plaintiff had no knowledge prior to the checking of the company's records by the accountant that Bredshall had profited by assigning the leases to the company. Plaintiff asserts that this was a fraud because the plan for becoming jointly interested in this enterprise contemplated that Bredshall would secure a lease of a suitable site and in this and other matters having to do with the corporation's welfare would act jointly in behalf of himself and plaintiff. On the other hand, Bredshall asserts that he obtained the first lease before plaintiff became interested in the enterprise, and that as to each of the leases it was fully understood by plaintiff at the time that in consideration of transferring them to the corporation he (Bredshall) should be compensated in the manner above noted. And in this connection he claims that the lessor insisted upon the leases being taken by Bredshall personally and that by entering into them he assumed the liability for payment of rentals aggregating approximately $30,000.

The circuit judge decreed cancellation of this $5,000 par value of stock. A careful review of the record satisfies us that he reached the right conclusion. The testimony does not sustain Bredshall's theory that there was any substantial value in either of these leases over and above the rents which the corporation is required to pay. This being so, as a result of these two transactions Bredshall secured $5,000 of stock in the corporation without giving any substantial value therefor. The trial judge was not impressed, nor are we, with Bredshall's claim that his credit or financial standing was indispensable to

the securing of these leases. The first of the two leases was obtained incident to the contemplated undertaking of plaintiff and Bredshall, and we are satisfied that the understanding and agreement between these men was that, incident to the investment and the necessary effort in developing the enterprise, they were to advance equal sums of money and share equally in the ownership and profits. The first lease was obtained incident to, and as a part of, the promotion of this undertaking; and this is true, notwithstanding the organization of a corporation to take over the enterprise was a subsequent development. From the outset there was a fiduciary relation between plaintiff and Bredshall.

"The promoter of the company, like its directors, is deemed to sustain towards the members of the company, and toward the corporation, the relation of trustee toward his *cestui que trust.*" *American Forging & Socket Co.* v. *Wiley,* 206 Mich. 664, 673.

As to the second lease, there can be no question of its having been secured expressly for the use of the corporation. Bredshall at that time was a director of the corporation, and a fair inference from the record is that he controlled the action of the board of directors. Under the circumstances of this case, notwithstanding Bredshall took the lease in his own name, he held the same for the use and benefit of his corporation; and he was not entitled to derive a profit incident thereto at the expense of the corporation or its other stockholders.

"The directors of a corporation are its agents. The entire management of corporate affairs is committed to their charge, upon the trust and confidence that they shall be cared for and managed   *   *   * for the common benefit of the stockholders. They are required to act in the utmost good faith, and in

accepting the office they impliedly undertake to give to the enterprise the benefit of their best care and judgment, and exercise the powers conferred solely in the interest of the corporation." *Ten Eyck* v. *Railroad Co.*, 74 Mich. 226, 232 (3 L. R. A. 378, 16 Am. St. Rep. 633).

See, also, *Old Mortgage & Finance Co.* v. *Pasadena Land Co.*, 241 Mich. 426.

The decree entered in the circuit court requiring cancellation of the $5,000 par value of stock in the corporation obtained by Bredshall incident to the leases is fully justified and sustained by the record in this case.

The remaining question presented on this appeal is whether cancellation should be decreed of the stock of the par value of $3,500 held by Bredshall for which he gave his note to the corporation; and also of $1,000 par value of the stock held by the defendant Smith for which he gave his note to the corporation. It is conceded that if cancellation of this stock is to be decreed defendants are entitled to an accounting for certain dividends applied in payment upon their notes and also to have the notes canceled and returned to the makers.

On this phase of the case, the testimony discloses that, at the time the stock of the corporation was increased to $25,000, dividends were being paid at the rate of two per cent. per month. Plaintiff paid $5,000 in cash, for which he received a like amount par value of this additional stock. Bredshall and Smith were two of the three members of the board of directors, and we think it is a fair inference they were assured of the co-operation of the third member of the board in any corporate action they saw fit to take. While thus dominating the affairs of the corporation, Bredshall gave his unsecured note at

six per cent. per annum for $3,500 for a like amount of the company's stock then paying dividends at the rate of 24 per cent. per annum; and Smith gave his unsecured $1,000 note at six per cent. per annum for a like amount of the stock. The company received no benefit from these notes, since neither of them was negotiated or discounted. They are still in the hands of the corporation, and no payments have been received thereon except dividends earned and paid by the company on stock standing in the name of Bredshall or Smith. In other words, the corporation has in no way profited by this transaction with its directors. Instead, its outstanding stock was increased substantially 20 per cent. and in this same proportion the benefits which other stockholders enjoyed by way of dividends or accumulated surplus were diminished. Transactions between a corporation and its directors personally should be carefully scrutinized, and the burden is always on directors in control of a company to show that all their transactions with it are fair and not in violation of the trust relation which they sustain to the company and its other stockholders.

"An officer of a corporation may deal with the corporation if his acts are open and fair and known to the directors and stockholders.

"The burden of showing the validity of a contract between a corporation and its officer or director, and the fairness and honesty of his dealings with the corporation, is on said officer or director." *Patrons' Mutual Fire Ins. Co. v. Holden* (syllabus), 245 Mich. 493.

Under this record we are not satisfied that these transactions were good-faith purchases of stock by Bredshall and Smith. Instead, we think the arrangement entered into was prompted by a desire

to have a substantial control of the company's affairs, and to unduly participate in its earnings to the disadvantage of other stockholders. This being true, we must affirm the decree of the circuit court canceling the stock so purchased by these defendants.

In making disposition of this case, perhaps it should be noted the record discloses that much, and perhaps all, of the stock of which cancellation is sought has been hypothecated and is now in the hands of persons who are not parties to this suit. Obviously, the *bona fides* of such hypothecations and the rights of parties concerned cannot be adjudicated in this case. Provision was made in the decree entered in the circuit court for cancellation of the notes given to the corporation by defendants Bredshall and Smith, and also for an accounting by the corporation to these two defendants for such dividends as accrued on stock lawfully held by them and applied in payment upon the canceled notes. This provision accomplishes an equitable result between the parties. The decree of the circuit court is affirmed, with costs to appellee.

CLARK, C. J., and McDONALD, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.