## BAKER v. HELLNER REALTY CO.

1. CORPORATIONS—DEEDS—MORTGAGES.

Deed from corporation to its president, made without authority of board of directors to have it stand as mortgage, recorded as a deed, and on which no mortgage tax was ever paid cannot be upheld as a mortgage.

2. SAME—DISSOLUTION.

President of corporation, defendant in suit by receiver of corporation to set aside fraudulent conveyances, may prove any claim he may have against the corporation in suit for dissolution.

3. EQUITY—JURISDICTION—ACCOUNTING—FRAUDULENT CONVEYANCES.

Accounting as to transactions not covered in bill of complaint in suit to set aside fraudulent conveyances by receiver of alleged insolvent corporation against president and director and others may be sought in other proceedings where lower court refused complete accounting as to all transactions raised and questioned by plaintiff.

4. CORPORATIONS—PRESIDENT—CONSTRUCTIVE FRAUD.

President and director of corporation who dominated transactions leading to execution of fraudulent conveyances alleged to have left corporation insolvent *held*, not entitled to retain real estate as security for amount due him as innocent grantee guilty only of constructive fraud.

5. SAME—PREFERENCES.

Corporation may prefer officers and directors even though preferences are given on eve of insolvency and in payment of antecedent debts.

6. SAME—OFFICERS DEALING WITH CORPORATION.

Officers of a corporation may deal with it only in good faith, contracts between them and corporation must be fair and in the interest of the corporation and all material facts must be made known to directors, and any unfair advantage taken of corporation by the officers may be made the basis of attack upon validity of contract.

7. SAME—CONTRACTS—BURDEN OF PROVING VALIDITY.

Burden of proving validity of contract between corporation and its president asserting rights thereunder *held*, not sustained (Act No. 327, Pub. Acts 1931, § 13, subd. 5).

8. SAME—FRAUDULENT CONVEYANCES—EVIDENCE.

Evidence in suit to set aside fraudulent conveyances, stripping corporation of practically all of its remaining income-producing real estate at inadequate price, *held*, to justify holding that transaction was a fraud upon stockholders and creditors.

Appeal from Wayne; Ferguson (Homer), J. Submitted October 13, 1933. (Docket No. 77, Calendar No. 37,389.) Decided December 29, 1933.

Bill by J. Lee Baker, receiver of Frischkorn Real Estate Company, a Michigan corporation, against Hellner Realty Company and others to set aside certain deeds and for other relief. From decree rendered, both parties appeal. Affirmed.

*John R. Watkins* and *Rolla L. Carpenter* (*Everett F. Hayes,* of counsel), for plaintiff.

*Robert M. Brownson, Kenneth Murray* and *Paul Marco,* for defendants.

BUTZEL, J. The Frischkorn Realty Company was organized in 1917 under the laws of Michigan. It was a closed corporation, in which all of the stock was held by Ephriam S. Frischkorn and his two brothers, also active as its officers and directors. In 1925, the capital was increased and newly-issued stock was offered and sold to the public. Ephriam S. Frischkorn remained its president and a director and stockholder until the dissolution of the company. He is hereinafter referred to as the defendant, although the Hellner Realty Company and J. H. Frischkorn were also joined as defendants. Prior to the hearing of the case, the bill of complaint was dismissed as to John H. Frischkorn, without prejudice to plaintiff's right to proceed against him in a separate action. Defendant was president and director on December 21, 1931, on which date a large part of the assets were turned over to him. Exactly a week later, the directors filed a petition for the dissolution of the Frischkorn Realty Company, a temporary receiver was appointed and, in February, 1932, J. Lee Baker was appointed permanent receiver.

We shall refer only to two parcels of property belonging to the corporation, designating them as parcels A and B. Parcel A consisted of 52 lots in Frischkorn's Grand Dale Gardens Subdivision and had been sold on contract to Bishop Gallagher of the Catholic Diocese of Detroit. The sum of $26,441.44 was still unpaid on the contract on December 21, 1931. The company also owned Grand Dale Gardens Subdivision No. 1, situated about two miles west of the Detroit city limits. A very large amount

of money was expended in improving this subdivision, and particular attention seems to háve been paid to approximately 500 lots involved in this suit, hereinafter referred to as parcel B. Parcel B was mortgaged to John H. Frischkorn for $35,000 in August, 1931. Approximately 85 per cent. of these lots had been sold on contract, the balances due aggregating $325,739.03 on December 21, 1931; 55 of these contracts, representing balances of $70,999.85, had been canceled.

Defendant contends that there was due him from the corporation the sum of $83,342.92, $57,431.27 of which was represented by a collateral note, dated February 28, 1930, and $25,911.65 by a note dated December 15, 1931. These notes constituted the balance due in his favor as the result of a series of alleged debits and credits between the company and defendant. The notes were not produced at the hearing. Defendant claims that they were later canceled and turned over to the corporation, and that plaintiff should have found them when he took possession of the books and papers of the corporation.

A special meeting of the directors was called for December 21, 1931. The notice of the meeting did not specify its purpose, as required by the by-laws. At that time, those active in the company's affairs knew or should have known that the corporation was in a serious condition. It had been threatened with foreclosure proceedings by the trustees under a bond issue, secured by a mortgage covering practically all of the company's income-producing property, with the exception of parcels A and B. Eight of the 11 directors attended the meeting. Among them were the defendant, his two brothers and F. A. Howes, one of the incorporators of defendant Hellner Realty Company, to which parcel B was deeded.

The testimony and minutes of the meeting disclose that it was represented to the directors that $83,342.92 was due defendant for actual cash advanced to the corporation for the continuance of its operations; that defendant had borrowed the necessary funds; and that some arrangements should be made to enable him to repay these loans. A resolution was adopted, approving and confirming the execution of the two notes hereinbefore · described and directing the proper officials to deed parcels A and B to defendant or his nominee in full payment of the corporation's obligations to him, on the cancellation and surrender of these notes. The deed to parcel B was to contain an assumption of the $35,000 mortgage liability by the grantee.

A deed to parcel B, running to the Hellner Realty Company, defendant's nominee, was duly recorded on the day following the meeting. A significant and suspicious circumstance is the fact that the deed was acknowledged as of December 15, 1931, six days prior to the meeting at which its execution was authorized. No new deed was executed covering parcel A. Defendant, however, produced a conveyance dated February 28, 1930, and recorded October 29, 1931, purporting to be a deed of parcel A. He claims that the instrument was intended as a mortgage. No mortgage tax was ever paid and the instrument was recorded as a deed. There is no showing that the conveyance was ever authorized by the board of directors as a mortgage and it cannot be upheld as such.

On December 28, 1931, the company filed a petition for dissolution. On April 18, 1932, plaintiff receiver filed a bill of complaint on behalf of the stockholders and creditors of the Frischkorn Realty Company, alleging that the entire transaction and transfer was

fraudulent; that the indebtedness claimed did not exist; that the meeting was irregular; that 'over $400,000 in assets were turned over to defendant in payment of an alleged indebtedness of $83,342.92, resulting in a net loss to the company of over $300,000 and a depletion of its assets to such an extent as to render it insolvent. Plaintiff also alleged that the $35,000 mortgage to John H. Frischkorn was fraudulent and executed without consideration and joined him and the Hellner Realty Company as defendants. The bill asked that the deeds and transfers, including the $35,000 mortgage, be set aside. The defendants filed a joint answer, in which they claimed the indebtedness to be *bona fide,* the entire transaction regular, and the value of the property transferred only equal to the amount due defendant.

The trial judge entered a decree setting aside the deeds as a fraud on the creditors and stockholders. This does not preclude defendant from proving any claims he may have against the corporation in the dissolution suit. The validity of the $35,000 mortgage was not adjudicated, inasmuch as the bill was dismissed as to John H. Frischkorn prior to the hearing. Defendants Ephriam S. Frischkorn and Hellner Realty Company have appealed, and plaintiff has filed a cross-appeal, claiming that the court should have retained jurisdiction for a complete accounting with regard to all transactions raised and questioned by the plaintiff during the hearing, particularly as to the Florida transactions. The bill of complaint contained no allegations attacking these transactions and the lower court refused to render such relief. A complete accounting may be sought in other proceedings.

Defendant claims that, if the transfer must be regarded as invalid, he was at most only guilty of constructive fraud and is, therefore, at least entitled to retain whatever he received as security for the amount due him. Inasmuch as the record reveals that he was the dominant figure in the series of transactions leading to the deeds, he can hardly claim rights as an innocent grantee guilty only of constructive fraud.

Appellants are correct in their assertion that it is settled in this State that a corporation may prefer its officers and directors, even though such preferences are given on the eve of insolvency and in payment of antecedent debts. *Bank of Montreal* v. *J. E. Potts Salt & Lumber Co.*, 90 Mich. 345; *Brown, Eager & Hull Co.* v. *Mosier*, 187 Mich. 55; *In re United Fuel & Supply Co.*, 250 Mich. 325; *Warner* v. *Longwell*, 261 Mich. 468. It is equally well settled, however, that officers of a corporation may deal with it only in good faith. Such contracts must be fair and in the interest of the corporation and all of the material facts must be made known to the directors. Any unfair advantage taken by an officer or director may be the basis for an attack upon the validity of the contract. See *Barnes* v. *Spencer & Barnes Co.*, 162 Mich. 509 (139 Am. St. Rep. 587); *Quinn* v. *Quinn Manfg. Co.*, 201 Mich. 664; *Old Mortgage & Finance Co.* v. *Pasadena Land Co.*, 241 Mich. 426; *Patrons' Mutual Fire Ins. Co.* v. *Holden*, 245 Mich. 493. Under the provisions of Act No. 327, Pub. Acts 1931, § 13, subd. 5.

"When the validity of any such contract is questioned, the burden of proving the fairness to the contracting parties of any such contract shall be upon such director, partnership, other group or association, or corporation who shall be asserting the validity of such contract,"

The defendant recognized this burden but did not meet it. Defendant claimed the larger portion of the indebtedness arose in the following manner: The corporation became interested in Florida land and, in consequence thereof, the Frischkorn Florida Company was organized and the Michigan company empowered to purchase $1,000,000 of stock in the Florida company. The latter was purchasing a tract of land from Dunedin Syndicate, Inc., in which defendant held $25,000 of preferred stock. In 1926, the Michigan corporation decided to acquire all of the assets belonging to the so-called Syndicate, with the exception, however, of a large tract of land which was being purchased on contract. It also agreed to assume all of the liabilities, with the exception of the very large sum due on this contract. Defendant asserts that there was included in these liabilities a claim of $89,500 by Fred Warner, supposedly for loans made to the Syndicate, and one of $5,000 by J. L. Kelly, for attorney's fees. Warner, a personal friend of defendant, also held $25,000 of preferred stock in the Dunedin Syndicate, Inc.

Defendant, at the hearing of the instant cause, claimed that he had purchased the Warner and Kelly claims, which were among those assumed by the Frischkorn Realty Company, and that he turned over to Warner and Kelly, in exchange therefor, a part of his stock holdings in the Frischkorn Realty Company. This exchange was made at a time when the company still had treasury stock for sale. Plaintiff contends that defendant, as president of the company, should have given the company an opportunity to take advantage of such a trade and thus relieve itself of the alleged obligations. Defendant claims, however, that the company was in no position to issue stock in payment of these claims, inas-

much as it had already issued 54,972 shares in excess of the number authorized by the securities commission.

We are satisfied that defendant did not sustain the burden imposed by statute and show the fairness of the transaction in its entirety. He failed to produce any written assignment of the alleged claims of Warner and Kelly and gave no details in regard to these claims. When pressed for more detailed testimony as to the nature of the obligations and their assignment, he stated:

"I don't know what I took from him in exchange for whatever I gave him."

Defendant failed to produce the canceled notes and it was disclosed that a search made by the receiver after he took possession of the company's assets, theretofore in the custody of the defendant and other officers of the corporation, failed to reveal their presence in the files.

There is considerable conflict in the testimony in regard to values. There is little doubt but that parcel A was worth $26,441.44, the full balance due on the Bishop Gallagher contract. If defendant's claims aggregated $83,342.92, as he testified, this would leave unsatisfied, after deduction of the balance due on parcel A, the sum of $56,901.48. In satisfaction of this amount, defendant contends he was entitled to land contracts with balances due aggregating $325,739.03 and, in addition, 69 unsold lots, all subject, however, to the $35,000 mortgage defendant was to assume. The deed to the Hellner Realty Company, defendant's nominee, did not include a clause assuming the mortgage, and the company was not relieved of liability.

Two experts were sworn as to value. We are not fully impressed by the testimony of either. Plaintiff's witness was not fully appreciative of the fact that the economic situation had materially depressed values. On the other hand, defendant's expert neglected to take into consideration the moral risk and personal responsibility of the land contract vendees in making his evaluation. Valuations necessarily had to be made as of December 21, 1931. At that time, hopes were still being entertained for an upturn and a further slump was not anticipated, with the result that values were not receding at so rapid a rate. Defendant's witness seems to have been influenced by his knowledge of the subsequent drop in values.

The two parcels constituted practically all of the property of the company that was bringing in any income and that was not included in the trust mortgage about to be foreclosed. Almost $400,000 had been spent in improvements in the course of the development of the two subdivisions and another in the immediate vicinity. Due to commitments made in the land contracts, a very large portion of this amount had been expended on the property in parcels A and B. All of the improvements called for were made on the lots in parcel B, while others remained uncompleted. A large amount was spent in making these improvements on the lots in parcel B during the year 1931, just prior to the transfers and the receivership. Payments were made by the vendees on a number of the contracts in 1931; at least $23,000 was paid on land contracts in parcel B during that year. The trial judge was correct in holding that, on the date of the attempted transfer, parcel B appeared to be worth far in excess of the balance alleged to be due defendant after the appli-

cation of the value of parcel A. This remains true even after making allowance for and conceding a $35,000 mortgage liability against parcel B.

At the directors' meeting of December 21, 1931, defendant failed to disclose the true facts. False statements were made to the effect that defendant's claim represented actual moneys advanced to the company in order to enable it to continue its operations. As a matter of fact, the transfers stripped the company of the few remaining assets that were bringing in any income, at a price that was wholly inadequate. The action was taken without full or fair disclosure to the directors. Two of the directors who voted in favor of the resolution testified that they were not aware of the real facts and that, had they been fully informed, it might have influenced their vote.

Time and space do not permit further discussion of many other pertinent facts evidencing the unfairness of these transfers. The law governing the dealings between a corporation and its officers is set forth in *Patrons' Mutual Fire Ins. Co.* v. *Holden, supra; Barth* v. *Bredshall,* 260 Mich. 522, 529. When the validity of such dealings are questioned, the burden of proving their fairness is upon him who seeks rights thereunder. Defendants did not sustain this burden; on the contrary, the testimony justified the trial court in holding that the entire transaction was a fraud on the stockholders and creditors.

The decree is affirmed, with costs to plaintiff.

McDONALD, C. J., and WEADOCK, POTTER, SHARPE, NORTH, and WIEST, JJ., concurred. FEAD, J., did not sit.