BAKER *v.* FRISCHKORN.

1. CANCELLATION OF INSTRUMENTS—MORTGAGES—FRAUD—EVIDENCE.
   In suit by receiver of corporate mortgagor to cancel a mortgage because of alleged conspiracy to defraud stockholders and creditors, record *held,* insufficient to establish fraud, where case is such that opportunity to see the witnesses and judge of their credibility is of particular importance and trial judge found no fraud.

2. FRAUD—EVIDENCE.
   Fraud must be clearly proved and established by satisfactory evidence and by facts which are inconsistent with an honest purpose.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted January 22, 1935. (Docket No. 60, Calendar No. 38,024.) Decided May 17, 1935.

Bill by J. Lee Baker, receiver of Frischkorn Real Estate Company, a Michigan corporation, against John H. Frischkorn and others to cancel a mortgage. Cross-bill by defendant John H. Frischkorn against plaintiff to foreclose the mortgage. From decree of foreclosure on cross-bill, plaintiff appeals. Affirmed.

*John R. Watkins* and *Rolla L. Carpenter* (*Everett F. Hayes,* of counsel), for plaintiff.

*Alex. J. Groesbeck* and *Robert M. Brownson,* for defendants.

BUTZEL, J. Reference is made to *Baker* v. *Hellner Realty Co.,* 265 Mich. 625, for many of the facts constituting the background of the instant case. J. Lee Baker, receiver of the Frischkorn Real Estate Com-

pany, seeks cancellation of a mortgage for $35,000 given by the Frischkorn Real Estate Company to John H. Frischkorn on August 1, 1931. He claims that the mortgage transaction was part of a conspiracy on the part of the Frischkorn brothers to defraud the stockholders and creditors of the company, and secure title to the mortgaged property to John H. Frischkorn's brothers; that John H. Frischkorn was not the real party in interest, but merely loaned his name to the transaction and acted entirely under the direction of his brothers; and that the mortgage was taken by John H. Frischkorn in order to prevent its being set off against larger claims which the company had against John H. Frischkorn's brothers.

Prior to the execution of the mortgage in August, 1931, the Frischkorn Real Estate Company was indebted to the Prindle estate in the sum of $22,000 on a contract for the purchase of land covered by the mortgage. The amount was past due and the estate was demanding payment. The company was also in need of funds to carry out certain major improvements it had agreed to make on lots sold under land contracts, the vendees of which were threatening to assert their rights. The records show that the situation was discussed at a meeting of the board of directors; that George M. Frischkorn, who was vice-president of the company, advised the board that it would be necessary to borrow $35,000, and stated that he could negotiate a loan of $35,000 for one year by mortgaging a part of the property. Thereupon resolutions were passed by the board authorizing the officers to negotiate a mortgage loan and to execute the mortgage. Eight of the 11 directors were present at the meeting, including Ephriam and George M. Frischkorn. John H. Frischkorn was

not a director. In pursuance of the above resolutions, the mortgage here attacked was executed by the Frischkorn Real Estate Company to John H. Frischkorn on August 1, 1931. The company at this time was unquestionably in bad straits financially, but it was not yet *in extremis.* (For the condition which later developed, see *Baker* v. *Hellner Realty Co., supra.*)

The entire $35,000 was apparently received by the company, payment being made in the following manner: (1) $8,000 by cashier's check of the Guardian Detroit Bank, payable to the company; (2) $14,000 by check of the Frischkorn Land Company payable to John H. Frischkorn, and by him indorsed to the Frischkorn Real Estate Company; (3) $13,000 by check of Ephriam S. Frischkorn payable to the Frischkorn Real Estate Company, and claimed by him to represent a loan made to John H. Frischkorn in order to enable the latter to loan the company an even $35,000. The Frischkorn Real Estate Company delivered to John H. Frischkorn one note for $22,000 and another for $13,000, both payable to him. He indorsed the second note to Ephriam S. Frischkorn and left it with the company, which delivered the note to Ephriam upon receipt of his check for $13,000, in accordance with John's instructions. In September, 1931, John H. Frischkorn executed a release of four lots from the mortgage, reciting the receipt of $1,600. This amount, however, was evidently never received by him. The record further shows that John never demanded interest or principal on the mortgage until the filing of his cross-bill in the instant suit, which was brought by plaintiff to cancel the mortgage.

Plaintiff calls attention to a number of very suspicious circumstances in support of his claim that

the execution of the mortgage was tainted with fraud. He points out that although the debt owed to the Prindle estate was assigned as one of the chief reasons for the negotiation of the mortgage loan on August 1, 1931, that debt had actually already been paid prior to that date by two checks, one for $17,400 and the other for $5,851.14, both dated July 13, 1931. The testimony, however, indicates that these checks were not released until July 29, 1931, when the company was sure of receiving the loan in question. Plaintiff also calls attention to the peculiar manner in which a part of the loan was made, by check of Ephriam S. Frischkorn for $13,000, payable to the company, while the note ran to his brother John. In explanation of this situation, John H. Frischkorn testified that his brother George asked him for a loan of $35,000; that he replied that he could get only $22,000, but that he thereupon asked Ephriam to lend him $13,000 so that he could make the loan an even $35,000, and upon Ephriam's assent, John agreed to loan the company the full $35,000. It is further shown that in 1932 this loan was repaid by John to Ephriam by turning over to him certain bonds of the company in the sum of $13,000, whereupon the note given by the company was reindorsed by Ephriam to John.

The most suspicious circumstances, however, relate to the testimony by John H. Frischkorn, his brother George, and one Hoffman, the auditor of the company, as to the manner in which the remaining $22,000 of the loan was paid to the company. Each testified with positive assurance that the $22,000 was paid in cash withdrawn by John from his safety deposit box and counted out in the company's office in the presence of George M. Frischkorn, Hoffman, and Matthews, secretary of the com-

pany. However, Keith M. Dillon, formerly in charge of banking, accounts payable, etc., for the company, who was next called to the stand, stated that it was his belief that the $22,000 was paid by check. The cashier's daily record showed that payment had been made by check. After the testimony was closed, counsel for defendants filed a motion to reopen the case, and thereupon John and George Frischkorn, and Hoffman, each testified that they had been mistaken in their original testimony; that after hearing Dillon's statements and checking the records, their memory was refreshed, and they now remembered that the $22,000 had been paid by an $8,000 cashier's check of the Guardian Detroit Bank, and the $14,000 check of the Frischkorn Land Company, as hereinbefore stated. It was shown that $8,000 in currency was withdrawn from a safety deposit box to which John and two of his brothers had access, but both the latter denied ownership of any part of this amount, contending that it belonged to John alone. This currency was used to purchase the cashier's check of $8,000 from the Guardian Detroit Bank, which was made payable to the company. It was claimed that the $14,000 check of the Frischkorn Land Company was received by John in payment of a demand note for that amount, delivered to him by the Frischkorn Land Company in September, 1930, for the redemption of certain shares of stock in that company, then owned by John. The records show that the Frischkorn Land Company paid interest to him on this note in January, 1931, and that on August 1, 1931, it gave him its check for $14,000 in final payment of the note, and this check was indorsed by John to the Frischkorn Real Estate Company. George M. Frischkorn and Hoffman explained the change in their testimony by stating that at the

time of the mortgage transaction the Frischkorn Real Estate Company had been engaged in a number of other transactions involving the payment of large sums in cash, and the error in their first testimony had resulted from a confusion of these transactions.

As an additional circumstance indicating fraud, plaintiff points out that prior to July 11, 1931, less than 30 days before the $14,000 check is alleged to have been received by John H. Frischkorn from the Frischkorn Land Company, the latter had a checking balance of but $473.50, and that on July 11, 1931, the Frischkorn Land Company received a check from the Frischkorn Real Estate Company for $21,000. The records show, however, that from April to September, 1931, the Frischkorn Land Company had received from the Frischkorn Real Estate Company payments totaling $88,041.23 on account of collections, and the testimony shows that the $21,000 received on July 11, 1931, was proper and in due course of business.

Other suspicious circumstances are also shown and explanations given. After a careful examination of the record, while our suspicions have not been completely allayed by the explanations offered and the records produced, we are not satisfied that fraud has been established. Fraud may not be lightly presumed. It must be clearly proved and established by satisfactory evidence and by facts which are inconsistent with an honest purpose. *Pierce* v. *Pierce*, 55 Mich. 629; *Graham* v. *Graham*, 184 Mich. 638; *Donnelly* v. *Lyons*, 173 Mich. 515. We have resolved very serious doubts in favor of defendants because the case is one in which the opportunity to see the witnesses and to judge their credibility is of particular importance. The trial judge,

who had this opportunity, found that there was no fraud, and on cross-bill decreed foreclosure of the mortgage.

The decree is affirmed, with costs to defendants.

POTTER, C. J., and NELSON SHARPE, NORTH, WIEST, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred. FEAD, J., did not sit.