HARTSEMA v. ADDISON COAL & COKE CO.

1. EQUITY—JURISDICTION—RESTRAINING SALE ON EXECUTION.
    A court of equity has general jurisdiction over the matter of
    enjoining sales under a levy of execution to satisfy a judg-
    ment.

2. SAME—JURISDICTION—ADEQUACY OF LEGAL REMEDY.
    The fact that the legal remedy appears from the face of the
    bill to be adequate does not deprive a court of equity of
    jurisdiction to consider the case as the adequacy of the legal
    remedy must be affirmatively pleaded in order to save the
    question for review.

3. SAME—PLEADING—AFFIRMATIVE DEFENSE—ADEQUACY OF LEGAL
    REMEDY.
    Mere denial, in answer, that equity affords a remedy held, not
    tantamount to allegation of affirmative defense that legal
    remedy was adequate.

4. PLEADING—CONCLUSIONS OF LAW—ADMISSIONS.
    Allegation that an assignment was a fraud upon creditors is a
    mere conclusion of law and is not admitted by opposite
    party's failure to deny the same.

5. SAME—NEW MATTER—DENIAL—CONSIDERATION FOR ASSIGNMENT.
    In former wife's suit to enjoin levy of execution by former
    husband's judgment creditor upon property leased by him
    upon which she had a lien for payment of permanent ali-
    mony by way of an amended decree of divorce after which
    decree he had given her an assignment of his leasehold inter-
    est, defendants' allegation that no consideration was paid
    held, merely denial of plaintiff's allegation that assignment
    was in settlement of moneys ordered paid by husband to
    plaintiff in amended divorce decree and not new matter
    requiring denial by plaintiff.

6. SAME—MISDESCRIPTION OF LEASEHOLD.

  Allegation that assignment of former husband's leasehold interest to plaintiff incorrectly described premises involved, made in defendant's answer to bill to restrain defendant, the husband's judgment creditor, from selling the personal property used on the premises and necessary to operation of junk business thereon *held,* a conclusion and to amount to no more than a denial that the assignment was of the leasehold involved herein.

7. FRAUDULENT CONVEYANCES—INSOLVENCY OF ASSIGNOR—PREFERENCES—HUSBAND AND WIFE.

  An assignment is not necessarily in fraud of assignor's creditors merely because he was insolvent at the time it was made as he may give preferences among his creditors, even to preferring a former wife who is pressing for payment of alimony.

8. SAME—PREFERENCES—ANTECEDENT DEBTS—CONSIDERATION.

  Preferences are not fraudulent even though the debtor is being hard pressed by other creditors at the time the preferential conveyance is made, provided that the discharged antecedent debt is substantially equivalent in amount to the value of the transferred property (3 Comp. Laws 1929, § 13392 *et seq.*).

9. SAME—PREFERENCE TO DIVORCED WIFE—CONSIDERATION.

  Assignment of husband's leasehold interest in certain described property, including all buildings, fixtures, scales, warehouses, fences and special railroad tracks located thereon, all of which was used in operation of junk business, to wife pursuant to lien imposed on rent due him from leasehold by amended divorce decree in which she was awarded $1,500 as permanent alimony and to whom $400 was then owed for temporary alimony *held,* amply supported by consideration where total face value of property assigned was $3,300 in rent from which wife shared with other judgment creditors of husband than defendant.

10. SAME—PREFERENTIAL ASSIGNMENT—GOOD FAITH.

  Assignment by former husband to plaintiff herein, of leasehold interest in property and various buildings, fences, fixtures, railroad tracks and equipment located thereon used in junk business, *held, bona fide,* under evidence, notwithstanding amended decree of divorce gave her lien on rent therefrom

alone and she shared such rent with certain of his judgment creditors, not including defendant whom plaintiff sought to restrain from selling leasehold and personalty to satisfy its judgment.

11. SAME—MISTAKE—DESCRIPTION OF LEASEHOLD IN ASSIGNMENT. Description of assignor's leasehold interest by lot numbers on "block 198," bounding the tract by named streets and referring to sublease of a certain date, *held*, to apply to "block 193," where there is no evidence assignor ever had any interest in block 198, and streets mentioned could only describe block 193, hence assignment applied to and was effective to transfer interest of assignor to assignee as to former's interest in block 193 in preference to husband's judgment creditor whom assignee seeks to restrain from selling property to satisfy its judgment.

Appeal from Muskegon; Sanford (Joseph F.), J. Submitted June 9, 1938. (Docket No. 55, Calendar No. 40,106). Decided November 10, 1938.

Bill by Jennie Hartsema against Addison Coal & Coke Company, an Illinois corporation, and Louis E. Eklund, sheriff of Muskegon county, to restrain an execution sale. Decree for plaintiff. Defendants appeal. Affirmed.

*Harry W. Jackson,* for plaintiff.

*Smedley & Stribley,* for defendants.

BUSHNELL, J. Plaintiff obtained a decree of divorce from her husband John Hartsema, April 26, 1934, which contained a provision that he should assign to her a one-half interest in all rentals to be received by him from one Fisher, the lessee of certain premises, until all past due temporary alimony and attorney fees should be paid. In this decree the court expressly reserved "jurisdiction over the question of any further payments to be made by the de-

fendant to the plaintiff as permanent alimony or in lieu of a property settlement." Hartsema had leased the land from the Pere Marquette Railway Company for the sum of $240 a year, and had used it in the operation of a coal and junk yard. He had installed certain improvements thereon, consisting of railroad trackage, a small wooden office building, a wooden warehouse building, and a 10-ton scale; there was some other personal property located on the premises. He had subleased the yard to Fisher in 1933 for a term of five years. The lease and sublease expire the 31st day of December, 1938.

The decree of divorce was amended on May 28, 1934, and plaintiff's former husband was required to pay her $1,500 as permanent alimony and she was given a "first lien" upon all moneys remaining due and unpaid upon the Fisher lease. At that time Hartsema was indebted to defendant Addison Coal & Coke Company and others. Certain judgment creditors of Hartsema, in attempting to satisfy their claims, totaling in excess of $1,200, had, in the interim, garnisheed the payments due Hartsema from Fisher; other garnishment proceedings were pending. June 20, 1934, Hartsema executed an instrument in which he assigned to his former wife all his interest in a lease held by him "on lots one, two, three, four, five and six of Block 198 of the City of Muskegon, Michigan, said Block being bounded on the north by Butler street, on the east by Ottawa street, on the south by Cross street, and on the west by East Western avenue; including all buildings, fixtures, scales, warehouses, fences and special railroad tracks located on said property, subject, however, to a lease given by me to one Jerome J. Fisher dated November 10, 1933." This assignment recited that it was made "pursuant to the terms of a decree

heretofore entered in the circuit court for the county of Muskegon, in chancery, in the case of Jennie Hartsema v. John A. Hartsema." The assignment was not recorded until December 13, 1935.

About March 30, 1935, an agreement was entered into between Hartsema and Harold H. Smedley, attorney for certain judgment creditors of the former, whereby the $50 monthly rentals due under the Fisher lease were assigned to Smedley, $25 to be applied on the creditors' judgments, and the other $25 to be "paid to the friend of the court for the benefit of said Jennie Hartsema." There is no evidence that Mrs. Hartsema authorized this contract, but she has accepted payments thereunder and has made no effort to enforce the "lien" granted to her in the amended decree.

In 1937 defendant coal company took a judgment against Hartsema of about $5,000, secured a writ of execution, and the sheriff made a levy on the personalty, et cetera, located on the leased property. Plaintiff then filed her bill of complaint to restrain defendant coal company and the sheriff from selling the property to satisfy the judgment, claiming that she owned the property, subject to the Fisher lease, by virtue of the assignment of June 20th. Defendants filed an answer in which they denied that Hartsema had sold or assigned the property to plaintiff and they alleged that, if such assignment or transfer was attempted, it was fraudulent because given without consideration, while Hartsema was insolvent, and with intent to delay, hinder and defraud creditors, and was therefore void. The circuit judge filed an opinion and entered a decree forever restraining and enjoining defendants from selling the property, et cetera. From this decree, defendants appeal.

Defendants claim that the bill of complaint should have been dismissed for lack of jurisdiction because plaintiff had an adequate remedy at law.

A court of equity has general jurisdiction over the matter of enjoining sales under a levy of execution to satisfy a judgment. *Asiulewicz* v. *Pietrazewski,* 220 Mich. 690; *Prochnow* v. *Anderson,* 244 Mich. 525. *Cf. Williams* v. *Mayor, etc., of Detroit,* 2 Mich. 560.

The fact that the legal remedy appears from the face of the bill to be adequate does not deprive a court of equity of jurisdiction to consider the case and the adequacy of the legal remedy must be affirmatively pleaded in order to save the question for appeal. See *Blehm* v. *Hanzek,* 272 Mich. 541, and authorities therein cited. *Cf. Williams* v. *Mayor, etc., of Detroit, supra,* and *Halkes* v. *Douglas & Lomason Co.,* 267 Mich. 600. Defendants' answer does not expressly aver the adequacy of the legal remedy, but merely denies "that equity affords a remedy." This allegation amounts to no more than an assertion, erroneous as we have seen, that equity had no jurisdiction over the instant case.

Appellants claim that they established their defense, that plaintiff's assignment was void because in fraud of creditors, by reason of plaintiff's failure to deny certain "new matter," alleged in defendants' answer, citing *Dramis* v. *Dunbar,* 280 Mich. 300, and that the bill should therefore have been dismissed. The "new matter" appears to be allegations that Hartsema was insolvent at the time the assignment was made to plaintiff; that no consideration was paid by her as assignee; that the property was not correctly described and the assignment was a fraud upon creditors. The allegation that the assignment was a fraud upon creditors is a mere con-

clusion of law and is not admitted by plaintiff's failure to deny the same. The allegation that no consideration was paid is not ''new matter'' but merely denial of plaintiff's allegation that the assignment was ''in settlement of the moneys ordered to be paid by the said John Hartsema to the plaintiff in the decree and order amending the decree.'' The allegation that the property was incorrectly described in the assignment is also a conclusion and amounts to no more than a denial of plaintiff's allegation that the assignment was of ''the property in question'' and ''located on ground leased to and released or rented out, by the defendant'' Hartsema.

Assuming it to be a fact that Hartsema was insolvent at the time of the assignment, it does not necessarily follow that such assignment was in fraud of creditors. In *Hill* v. *Bowman,* 35 Mich. 191, the court said:

''Our law permits a debtor to give preferences among creditors; and he may prefer his wife as a creditor with quite as much justice and propriety as any other.

''Much stress is laid in this case on certain suspicious circumstances attending the dealings between Mrs. Hill and her husband, which it is insisted are evidence that their motives have been fraudulent and their pretenses dishonest. The following are enumerated: The husband conveyed all his property; there was no change in the possession, but he still continued to cultivate and enjoy the land; the conveyance was secretly made, and was not recorded until some time afterwards, and then only on the grantor advising it; it was made after suit threatened and it was made to his wife. It is also claimed that certain notes from the husband to the wife, which they produce as evidence of the loans, bear on their face evidence that they were not written at

different times as the parties pretend, and it is argued that they were manufactured for the purposes of this suit.  *  *  *

"If there were any real doubt of the husband having had complainant's money, as she asserts that he did, the circumstances to which our attention is called would receive due attention as having some tendency to show that the whole transaction was one entered and carried out under false pretenses. But when we find the indebtedness satisfactorily established, all these circumstances go for nothing. The husband had a right to pay her, and she was under no obligation to put the deed immediately on record, or to take upon herself the management of the farm. *  *  * The fact that suit against her husband was threatened might even have been the motive with her for insisting upon payment, and still this would not affect her rights."

The important inquiries are whether the ex-wife made a *bona fide* claim against her former husband, whether it was substantially equivalent in value to the property conveyed in satisfaction thereof and whether the transfer was an actual and not a colorable transaction. The fraudulent conveyance act, 3 Comp. Laws 1929, § 13392 *et seq.* (Stat. Ann. § 26.881 *et seq.*), has not changed the rule in the *Hill Case, supra.* Preferences are not fraudulent even though the debtor is being hard pressed by other creditors at the time the preferential conveyance is made, provided that the discharged antecedent debt is substantially equivalent in amount to the value of the transferred property. *Warner* v. *Longwell,* 261 Mich. 468. See, also, *Bankers Trust Co.* v. *Humber,* 263 Mich. 426, and *Baker* v. *Hellner Realty Co.,* 265 Mich. 625.

Plaintiff's claim arose out of a court decree and is therefore established as a matter of record. In

awarding plaintiff $1,500 permanent alimony, the court was aware that there were other creditors pressing her former husband, since these facts were alleged in plaintiff's petition for an amendment of the decree.

At the time of the transfer of the property to plaintiff, Hartsema owed her over $1,900, at least $400 of which represented unpaid temporary alimony and $1,500 permanent alimony. The highest cash value put upon the property was a $600 valuation by defendants' witness, Slater. Fisher, the sublessee, testified that the property was of no value to him unless it could be used in connection with the leased premises. The rentals still due under the Fisher lease at the time of the assignment were approximately $2,700, bringing the total face value of the property assigned to a maximum of $3,300. However, the garnishments secured by Hartsema's creditors before the amendment of the decree and the assignment from Hartsema to plaintiff gave them a prior interest in at least the half of the rentals which was not included in the original divorce decree, and this reduced the value of the property included in the assignment to an amount which could not have been much in excess of plaintiff's claim. It therefore follows that ample consideration was present at the time of the assignment.

Nor can we say that the assignment was a colorable transaction. Appellants argue that neither the original nor the amended decree assigned to plaintiff the personalty in question. This fact is wholly immaterial. Hartsema had the legal capacity to make the assignment of his own accord in satisfaction of the alimony owing to his former wife. We do not believe that the fact that Mrs. Hartsema was willing to share with other creditors in the proceeds of the

lease, even though the amended decree and the assignment entitled her to the full amount thereof, is particularly significant. The trial court construed this conduct on her part as "indicative of her willingness to assist her former husband and paying his debts," and we see no reason for disagreeing with this conclusion. On one occasion in December of 1935, when plaintiff learned that attempts were being made on behalf of Fisher to buy the personalty on the leased premises from her former husband, she protested and claimed to be the owner thereof. On the whole, the evidence leads us to the conclusion that the assignment was a *bona fide* transaction.

The assignment described the leased property as being in Block 198, whereas the property on which the levy was made was on Block 193. However, the street boundaries mentioned in the assignment could only describe Block 193, and the property is stated to be subject "to a lease given by me to one Jerome J. Fisher dated November 10, 1933." So far as the record indicates, the only such lease executed by Hartsema covered Block 193, and there is no evidence that he ever owned or had an interest in Block 198. See *Tuthill* v. *Katz,* 163 Mich. 618. It is evident that the parties intended the assignment to relate to Block 193 and not Block 198.

The trial judge was correct in his conclusion and the decree entered was proper. The decree is affirmed, with costs to appellee.

Sharpe, Potter, Chandler, North, and McAllister, JJ., concurred with Bushnell, J. Wiest, C. J., concurred in the result. Butzel, J., took no part in this decision.