QUINN v. QUINN MANUFACTURING CO.

1. CORPORATIONS — OFFICERS AND AGENTS — AUTHORITY OF -TREASURER TO ISSUE NOTES—ACQUIESCENCE—ESTOPPEL.

In an action on a promissory note issued by the treasurer of the corporation maker, where it appeared that at the time of the giving of said note there were other notes outstanding all issued by said treasurer with the apparent knowledge and acquiescence of the board of directors, his authority may be fairly implied from such continued acts, and defendant was estopped from questioning it.

2. SAME.

An officer of a corporation can deal with the corporation if his acts are open and fair and known to the directors and stockholders.

3. SAME—DIVIDENDS DECLARED AT STOCKHOLDERS' MEETING—VALIDITY.

While it is the rule that directors alone have the authority to declare dividends out of the net earnings of a corporation, the fact that dividends were declared at a meeting called on the record a "stockholders' meeting" were in

effect the actions of the directors, where it appeared that all directors were present and fully exercised their judgment and discretion.

4. SAME—DIVIDENDS—DETERMINATION OF EARNINGS—RULE.

In deciding whether a dividend was rightfully made, the transaction must be viewed from the standpoint of that time, and not in the light of subsequent events; notes or overdrafts by persons then considered abundantly good should not be counted as losses because they afterwards proved such.

5. SAME.

Whether or not there were available net assets to warrant the directors of the corporation in declaring the same, *held*, a question for the jury, under proper instructions.

Error to Wayne; Tappan, J., presiding. Submitted April 19, 1918. (Docket No. 38.) Decided June 3, 1918.

Assumpsit by Margaret M. Quinn against the Quinn Manufacturing Company on a promissory note. Judgment for plaintiff. Defendant brings error. Affirmed.

*Geer, Williams & Martin,* for appellant.

*Frank C. Cook* and *John P. O'Hara,* for appellee.

KUHN, J. The plaintiff's action against the defendant is based upon a promissory note, dated December 31, 1913, for $7,000, signed "Quinn Manufacturing Co., S. A. Quinn, Treas.," purporting to have been given to Mrs. K. E. Hughes, the mother of plaintiff, who indorsed it to the plaintiff. It was the claim of the plaintiff that she was the *bona fide* holder of the note; that her husband, S. A. Quinn, as treasurer of the defendant company and acting for the company, executed the note in favor of Mrs. Hughes, who regularly indorsed it and transferred it to her, and that the entire transaction was completed in the usual and regular course of business of the company, and that

therefore the company is in duty bound to pay the amount of the note with interest. It was the claim of the defendant that the consideration of the note in question was made up of $718.20, a balance of a former note given by the company to S. A. Quinn, also notes of the company for the following dividend checks from the company to S. A. Quinn: November 20, 1912, $1,877; April 1, 1913, $1,026.20; August 4, 1913, $1,126.20; October 27, 1913, $1,126.20; December 31, 1913, $1,126.20, it appearing that when the company declared dividends—dividend checks being regularly issued to the stockholders—Mr. S. A. Quinn would then give his personal check to the company for the amount received by him as dividend and take the company's note in like amount. It is the further contention of the defendant that these dividends were wrongfully declared; in that the actual net earnings of the company properly applicable to dividends in the respective years were insufficient to warrant the declaration of these dividends.

The plaintiff's declaration is in assumpsit on the common counts with a copy of the note in suit attached. The defendant pleaded the general issue with notice of set-off on account of certain salary of Mr. Quinn paid to Mrs. Quinn after his death and with notice that the note in suit represents the dividends wrongfully declared and credited or paid to Quinn. An affidavit was also filed denying Quinn's authority to execute the note. At the close of the plaintiff's proofs, the defendant moved for a directed verdict on the ground that the consideration of the note was the alleged illegal dividends in question, and that the dividends were declared at stockholders' meetings instead of directors' meetings. The motion being overruled, it was renewed at the close of the proofs and again overruled. The case was submitted to the jury under instructions, in substance, that if they

found that the dividends were improperly declared, their verdict should be for the defendant, otherwise for the plaintiff, less the amount of the defendant's set-off on account of Quinn's salary. The jury found in favor of the plaintiff for $7,544.34, upon which verdict judgment was entered. The defendant then moved for entry of judgment in° its favor notwithstanding the verdict, which motion was denied. A motion for a new trial, being made, was also denied.

The case being brought here by writ of error, appellant's counsel discuss the various assignments of error, under the following heads, as set forth in their brief:

"1. A verdict should have been directed in defendant's favor, on the ground that Quinn had no authority to sign and execute the note in suit.

"2. A verdict should have been directed in defendant's favor, on the ground that the dividends in question, which constituted the consideration of the note in suit, were declared at stockholders' meetings, not at directors' meetings.

"3. A verdict should have been directed in defendant's favor, on the ground that the note in suit represents dividends wrongfully declared, in that such dividends were not declared out of net surplus earnings of the defendant company, and hence formed no consideration for the note in suit.

"4. There was error in the admission and exclusion of evidence.

"5. Judgment should have been entered in defendant's favor notwithstanding the verdict.

"6. Defendant's motion for a new trial should have been granted."

1. It is urged that because the by-laws of the company conferred no authority on Quinn as treasurer to execute negotiable instruments and because there was no resolution of the board of directors authorizing the giving of the note in suit, that therefore Quinn had no *actual* authority to sign and execute the note in

suit and that a verdict should have been directed in favor of the defendant. It is undisputed Quinn was the only one who ever executed notes on behalf of the company and that there were outstanding promissory notes given by the Quinn Manufacturing Co., amounting to $48,000 at the time the note in suit was given to Mrs. Hughes. We think that the authority to execute this note may be fairly implied from the continued exercise of the power and from the holding out to the business world of the officer as being invested with such power. 2 Thompson on Corporations (2d Ed.), § 1564. The continued exercise by Quinn of the power to execute notes, with the apparent acquiescence of the board of directors, now estops the defendant, under the rule above stated, from questioning his authority in this respect. But it is said that while this rule may be urged in a suit by a third person on a note for money borrowed or for merchandise purchased, no third person is involved in this suit, and that Mrs. Hughes, the payee of the note, and the plaintiff, the indorsee thereof, stand simply in the shoes of Quinn, as the transaction amounts to an attempt by Quinn to pay to himself the dividends in question, he acting for the defendant company in paying them and for himself in receiving payment. That his acting in this *dual* capacity rendered the note in suit void, as neither Mrs. Hughes nor the plaintiff occupied the status of a holder in good faith for value. An officer of a corporation can deal with the corporation if his acts are open and fair and known to the directors and stockholders. *Barnes* v. *Spencer & Barnes Co.*, 162 Mich. 552, and cases there cited. If the dividends had been earned at the times they were declared, which question will be discussed later in this opinion, then it cannot be said that Quinn was not acting fairly in executing the note in suit. Upon the record as here made, we are not impressed that

there is merit in the first contention of defendant's counsel.

2. Nor are we of the opinion that a verdict should have been directed because the dividends in question were declared at stockholders' meetings instead of directors' meetings. Notice was given to both common and preferred stockholders of the meetings held on January 16, 1912, and January 21, 1913. Only common stockholders, however, participated in the proceedings of the meetings, which were attended by all the directors, excepting that at the meeting in January, 1913, director William Brinen was not present, although his stock was represented by proxy and he actually received the dividends which were declared. It is conceded by counsel for appellee that the general rule is that the directors of a corporation alone have the authority to declare dividends out of the net earnings of a corporation (*Knight* v. *Alamo Manfg. Co.*, 190 Mich. 228), but it is urged that the learned circuit judge was right when he said that:

"The record shows the directors were all at a meeting and acted upon that question of the dividends. I shall hold that this is sufficient passing of a dividend by the board of directors."

The court's attention was not called at this time, nor at any other place in the record, to the claim that the alleged absence of William Brinen affected the validity of the action of the other directors. As the statement of the trial judge was allowed to stand unchallenged and he had no opportunity to pass on the question now urged by counsel, we will consider the question on this appeal as if the record fully justified his statement. We think it reasonable to hold, under these circumstances, that the actions of the stockholders' meetings in January, 1912, and January, 1913, were in effect the actions of the directors, the judgment and discretion of the directors upon the question of dividends

having been exercised by them at meetings attended by them, although called upon the record stockholders' meetings. See *Spencer* v. *Lowe*, 198 Fed. 961; 8 Thompson on Corporations (2d Ed.), § 5285.

3. Appellee's counsel say that they do not dispute the right of the preferred stockholders of the defendant corporation to raise the question that the note in suit represents dividends wrongfully declared, in that such dividends were not declared out of net surplus earnings of the defendant company; but insist that the record in this case presents a question of fact for the jury, which was properly left to them for determination by the trial court under a proper charge. It is contended by appellant's counsel that while the defendant company apparently had surplus net earnings at the close of business for the respective years in which the dividends were declared sufficient to warrant the declaration thereof, the actual condition of its affairs at the close of those years did not warrant these dividends, because in the loss and gain statements submitted as a basis for the dividends there were included worthless accounts receivable in large amounts, and there was a failure to include accounts payable which should have been included. After the death of Mr. Quinn in July, 1914, the books of the company were audited by the audit department of the Security Trust Company, Mr. C. E. Neff having charge of the audit. The affairs of the company were found in such condition that it was necessary to liquidate the company's business, and the report disclosed $39,-271.82 (estimated) of bad accounts which were carried as live assets. Attempts were made to collect these accounts and some collections were made, so that the loss on account of bad accounts was actually approximately $35,000. The affairs of the company were finally wound up by Leo A. Migan, who acted as liquidation manager. Some argument is advanced in support of

the claim that accounts receivable should not be taken
into consideration by a corporation for the purpose of
showing surplus net profits out of which to declare
dividends. It is well established that book accounts
concerning which there is no question may be included
in the assets of a corporation in determining whether
or not there has been a net profit. *Spencer* v. *Lowe,
supra.* From the fact that Neff and Migan testified
that they were unable, in winding up the affairs of the
business, to collect these accounts, it does not neces-
sarily follow that these accounts were worthless three
and four years earlier. With reference to this, we
think what the trial judge said in overruling the mo-
tion to enter judgment for the defendant *non obstante
veredicto* is pertinent:

"Proofs show that the receiver has been unable to
collect many accounts of persons who owed the com-
pany at the time these dividends were declared. It
is universal experience that debtors who may be un-
collectible from a legal standpoint, will continue to
pay their running accounts to a going concern, but as
soon as it ceases to operate these same debtors, whose
accounts were properly deemed to be valuable assets,
at once discontinue payment and the accounts thus
become worthless."

The rule is thus stated in *Main* v. *Mills,* 6 Bissell
(U. S.), 98:

"In deciding whether a dividend was rightfully
made, the transaction must be viewed from the stand-
point of that time, and not in the light of subsequent
events. Notes or overdrafts by persons then consid-
ered abundantly good, should not be counted as losses,
because they afterwards proved such."

There is considerable dispute concerning certain ac-
counts payable which it is alleged did not appear in
the statements of 1911 and 1912 and that certain
goods appeared in the inventories of 1911 and 1912
which did not appear in the accounts payable for those

years respectively. It is impossible, and would not profit, to attempt to discuss these various accounts in this opinion. It is sufficient to say that we have considered the contentions of counsel with reference thereto and are satisfied that the conflicting testimony concerning them fairly presented questions of fact for the jury. Whether or not the defendant company was in a financial condition—that is, whether or not there were available net assets—to warrant the directors in declaring dividends earned in 1911 and 1912, became on this record a question for the jury and was properly submitted to them by the trial judge in a clear and concise charge.

4. We have examined the various assignments of error with reference to the admission and exclusion of evidence and find no prejudicial error committed in the rulings with reference thereto.

5 and 6. Neither are we of the opinion that the court erred in denying the motion to enter judgment for the defendant *non obstante veredicto,* and in denying the motion for a new trial.

The judgment is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.