BARBER *v.* KOLOWICH.

1. BANKS AND BANKING—LOANS TO PRESIDENT IN EXCESS OF STATUTORY LIMIT.

President of bank, as borrower therefrom, who, after having obtained maximum loan permitted by law, obtains an additional loan through an irresponsible "dummy" would be guilty of fraud and where such borrower obtains the additional loan through his wife, even though she be financially responsible and collateral deposited was adequate, the transaction is regarded with suspicion (3 Comp. Laws 1929, § 11922).

2. CORPORATIONS—OFFICERS AND DIRECTORS DEALING WITH CORPORATION—GOOD FAITH.

Directors and officers of a corporation stand in a fiduciary position and may deal with it only in good faith and with all material facts made known to the other directors.

3. SAME—DIRECTORS—BURDEN OF PROOF.

A director has the burden of proving the fairness and honesty of his dealings with the corporation.

4. BANKS AND BANKING—LOANS TO OFFICERS AND DIRECTORS—DISCLOSURE.

An officer and director of a bank may not obtain a loan from it directly or indirectly without disclosing all facts to other directors and appropriate officers and first obtaining their approval and proper corporate action (3 Comp. Laws 1929, § 11922).

5. SAME—LOANS TO DIRECTORS—STATUTES.

The law demands the fullest disclosure and fair dealing by a director or officer in his relations with a bank and the approval of two-thirds of the directors of a loan in excess of 10 per cent. of capital and surplus (3 Comp. Laws 1929, § 11922).

(97)

6. Same—Loan to Officer in Excess of Statutory Limit—Fraud
—Evidence.

In bank receiver's action against former president, who owned
65 per cent. of its stock, and his wife for fraudulent conceal-
ment that loan obtained on wife's note was for benefit of hus-
band who had already borrowed from the bank in excess of
amount allowed by statute, record showing that wife did not
testify but presenting evidence that loan was obtained for ben-
efit of a private bank, owned and operated by defendants as
partners, and husband, called for cross-examination under the
statute, gave testimony leading to such an inference, was unable
to show that any of loan was taken for individual use of wife,
and records of private bank reveal no trace it was so used, prop-
erty owned by husband or him and his wife jointly was con-
veyed to plaintiff's bank as collateral for this and other loans
and that only a portion of collateral for this loan was in-
dividual property of wife, and showing a substantial loss by
reason of the loan having been made *held*, to justify finding
that husband fraudulently obtained funds from bank (3 Comp.
Laws 1929, §§ 11922, 14220).

7. Same—Fraud—Evidence—Action Against President's Wife.

In bank receiver's action against former bank president and his
wife, plaintiff *held*, to have failed to sustain burden of show-
ing wife guilty of fraud in connection with loan to husband
in excess of amount permitted by statute to be loaned to
bank officer; the wife having no fiduciary duty to the bank
(3 Comp. Laws 1929, § 11922).

8. Fraud—Loan to Bank Officer's Wife—Evidence.

Where trial judge made no finding of fraud on part of wife of
bank president as a matter of fact but only as a matter of
law in denying new trial in action for conspiracy to defraud
bank brought by receiver against former president and his
wife and there is no showing wife had knowledge husband had
exceeded statutory limit of loan from his bank, her liability is
confined to judgment in assumpsit, no tort being shown to
have been committed by her (3 Comp. Laws 1929, § 11922).

9. Husband and Wife—Raising Money.

A woman has a right to raise money in a legal manner to help
her husband.

10. BANKS AND BANKING — CONSPIRACY — FRAUD — LOAN TO PRESI-
DENT'S WIFE.

> In bank receiver's action against former president and his wife
> for conspiracy to defraud bank by obtaining loans in excess
> of husband's power to borrow without complying with stat-
> utory requirements, plaintiff who had burden of showing fraud
> on part of wife as she owed no fiduciary duty to bank *held,*
> not to have sustained such burden (3 Comp. Laws 1929,
> § 11922).

Appeal from Wayne; Lamb (Fred S.), J., presid-
ing. Submitted October 15, 1937. (Docket No. 134,
Calendar No. 39,522.) Decided January 19, 1938.

Case by Everett W. Barber, receiver of State
Bank of America, against George J. Kolowich, Irene
G. Kolowich and John C. Finan to recover amount
of loans alleged to have been procured fraudulently.
James E. Atkinson, successor receiver, substituted
as plaintiff. From judgment for plaintiff against
defendants Kolowich only, they appeal. Affirmed as
to George J. Kolowich. Reversed as to Irene G.
Kolowich.

*Neill E. Graham* and *Cook, Smith, Jacobs & Beake*
(*O. L. Smith* and *George D. Hatie,* of counsel), for
plaintiff.

*Savery, McKenzie & Hamilton* (*John A. Hamilton,*
of counsel), for defendants.

BUTZEL, J. Plaintiff, receiver of the State Bank
of America, in an action based upon alleged fraud in
securing a loan of $24,000 from the bank, had judg-
ment against the defendants Kolowich for $18,842.78,
this being the unsatisfied portion of said loan. The
defendants have appealed.

While defendants admit plaintiff was entitled to a
judgment in assumpsit for the above amount against

defendant Irene G. Kolowich, they assert on this appeal that there was error on the part of the trial judge, who tried the case without a jury, in finding a judgment against both defendants on the ground of the alleged fraud.

George J. Kolowich was the president of the State Bank of America and owned approximately 65 per cent. of its stock. He and his wife, Irene G. Kolowich, for years had been in a partnership business known as Kolowich & Company which conducted the Merchants & Mechanics Bank of Hamtramck, Michigan. No question is raised as to the legal status of the so-called partnership between a husband and wife. On October 4, 1929, Mrs. Kolowich borrowed $24,000 from the State Bank of America. She executed a collateral form promissory note which was secured by 7,906 shares of Detroit Housing preferred stock and 7,906 shares of Detroit Housing common stock. She gave a renewal note of like character on May 29, 1930. In this renewal note it was recited that the total value of the above mentioned collateral was $103,987, though there is some testimony that this was stated as "book" value. On the date of the original loan Mrs. Kolowich received a cashier's check from the State Bank of America for $24,000, and on this same day the check was deposited in the American State Bank to the account of the Merchants & Mechanics Bank. Later (October 24, 1929) the board of directors approved a line of credit to Mrs. Kolowich in the amount of $25,000. Previous to making the $24,000 loan she had borrowed from and repaid to the bank large sums. At the time Mrs. Kolowich obtained this loan, Mr. Kolowich had already borrowed from the State Bank of America, of which he was president, in excess of the amount limited by statute. Act No. 66, § 25, Pub. Acts 1929,

being 3 Comp. Laws 1929, § 11922. It is plaintiff's theory that this $24,000 loan was secured by Irene G. Kolowich at the behest and for the benefit of her husband, George J. Kolowich, who could not legally secure a further loan for himself from the State Bank of America, and that either Mr. Kolowich or the partnership made up of Mr. Kolowich and Mrs. Kolowich actually received the proceeds of the loan. The loan was not paid at maturity and later the deposited collateral was sold for $9,626. This amount was credited on the note. Plaintiff alleges that the defendants herein concealed the actual nature of the transaction from the directors of the State Bank of America, and that by thus obtaining a loan for the benefit of Mr. Kolowich or for the partnership of which he was a member in excess of the amount he could lawfully borrow from the bank a fraud was perpetrated on it.

In their brief appellants state:

"We are willing to concede that if the copartnership of George J. Kolowich and Irene G. Kolowich, doing business as the Merchants & Mechanics Bank, had borrowed $24,000 from the State Bank of America, that such a loan would have been illegal and a fraud on the part of the partners, because the partnership note would be charged against Mr. Kolowich's line of credit. * * * And it is not disputed that George J. Kolowich, on October 4, 1929, had exceeded his line of credit with the bank. It is our contention, however, that the loan of $24,000 to Irene G. Kolowich, was not a loan to the partnership, but was a loan to Irene G. Kolowich personally."

If this $24,000 loan was merely a loan in the name of Irene G. Kolowich, but in fact was a loan to Mr. Kolowich or the partnership composed of himself

and his wife, it was made in violation of the statutory limitation; and appellants concede its consummation in that event was a fraud upon the bank and its unpaid creditors. There is no testimony that the loan was approved by a two-thirds vote of the bank's directors, as is required in a loan of this character by the above cited statute. So the controlling issue to be determined is whether this loan was in fact a loan to Irene G. Kolowich personally; or was it a loan to George J. Kolowich or the partnership Kolowich & Company, obtained through a subterfuge whereby the loan on its face appeared to be to Irene G. Kolowich.

In support of their claim that this was an individual loan to Mrs. Kolowich, appellants point out that there was nothing on the face of the note which in any way indicated it was a loan to or for the benefit of either Mr. Kolowich or the partnership, that the note was signed by Irene G. Kolowich personally, that the name of George J. Kolowich nowhere appears on the note, and that approximately 5,000 shares of the stock deposited as collateral security was the individual property of Mrs. Kolowich; and other inferences from the testimony of like character are stressed by appellants. On the other hand, appellee contends that the following facts and circumstances appearing in the record sustain his contention that in truth this loan through subterfuge and deceit was unlawfully obtained for the benefit of the Merchants & Mechanics Bank, owned and operated by the partnership, Kolowich & Company. Immediately upon securing the cashier's check for $24,000 this item was deposited in the American State Bank for the benefit of and to the account of the Merchants & Mechanics Bank. Mrs. Kolowich did not appear as a witness; and Mr. Kolowich, who was called as a

witness by plaintiff under the statute (3 Comp. Laws 1929, § 14220) and who seemed to be the person who had most knowledge of the details of this transaction, ·was unable to state what, if any, of the claimed loan to the Merchants & Mechanics Bank was taken by Mrs. Kolowich. A rather searching investigation of the records of the Merchants & Mechanics Bank reveal no trace of such a transaction. Instead the funds obtained from the State Bank of America on the note signed by Irene G. Kolowich were immediately turned over for the use and benefit of the Merchants & Mechanics Bank, no part of the loan appearing to have been used by Mrs. Kolowich for her individual benefit. Further, 2,906 units of the stock deposited as collateral to the $24,000 loan were owned jointly by Mr. and Mrs. Kolowich. In addition to this George J. Kolowich conveyed to the bank his interest in certain real property which he owned either individually or jointly with Mrs. Kolowich as collateral security for this and other loans. Mr. Kolowich gave the following testimony:

"*Q.* Now does that refresh your recollection as to your testimony over there, that it was your claim there that your wife made a loan, made this particular loan of $24,000 for the purpose of loaning it to the M. & M. bank, isn't that it?

"*A.* I take it that way, yes, sir. * * *

"*Q.* What were you having your wife borrow the $24,000 then for, if you did not need it?

"*A.* I could not say. It may have been used for investment. It may have been used for assisting some other corporation that we were interested in. It may have been borrowed to assist the banking company. But I do know *we* borrowed money and we put up good collateral at that time."

If a borrower, after obtaining a bank loan amounting to the maximum permitted by law, secures an additional loan through an irresponsible "dummy," he would be guilty of fraud. If a loan is made by the borrower's wife, after he has obtained the legal limit from the bank, it casts suspicion on the transaction. It is contended that he would not be guilty of fraud if the intermediary were a responsible person who deposited adequate collateral to secure the loan. Even though Mrs. Kolowich may have been responsible, and even though the collateral deposited may have been satisfactory, a further obligation rested on Kolowich. He was dealing with his own bank, of which he was president, director and owner of over 60 per cent. of the stock. Without question the proceeds of the loan were for Kolowich's benefit. Furthermore, he had an interest in part of the collateral.

The legislature has seen fit to permit directors and officers of a bank to borrow from that bank. 3 Comp. Laws 1929, § 11922. However, the directors and officers of any corporation stand in a fiduciary position and may deal with the corporation only in good faith, with all material facts made known to the other directors. *Baker* v. *Hellner Realty Co.*, 265 Mich. 625. The director has the burden of proving the fairness and honesty of his dealings with the corporation. *Veeser* v. *Robinson Hotel Co.*, 275 Mich. 133. These rules should be applied even more stringently to an officer and director of a bank who should be concerned with the welfare of depositors as well as that of customers and stockholders.

As an officer and director, Kolowich could not deal with the bank, either directly or indirectly, by having Mrs. Kolowich obtain a loan for his benefit, without disclosing all of the facts to the other di-

rectors and appropriate officers and first obtaining their approval and proper corporate action. The law demands the fullest disclosure and fair dealing by a director or officer in his relations with a bank. It further requires an approval by a two-thirds vote of the directors of a loan in excess of 10 per cent. of the capital and surplus. Although he was in a position to know all of the facts and circumstances, Kolowich's testimony was evasive. He did not disclose the manner in which the loan was handled by the bank. He did not tell whether or not the other officers and directors knew of the intended loan before it was made and had an opportunity to pass on its wisdom. The formal approval of the directors was not obtained until after the loan had been made. There is no showing that an approval by two-thirds of the directors was ever obtained. The conduct of Kolowich in obtaining the funds of the bank falls far short of that required of an officer and director of a bank. From all the circumstances we must conclude that Kolowich fraudulently obtained the funds of the bank and therefore is obliged to repay them; that his unpaid liabilities thus exceeded the statutory limit; and that the tort judgment against him was proper.

The case against Mrs. Kolowich, however, fails for lack of proof. The burden of showing fraud was on plaintiff, but it was not sustained. The loan to Mrs. Kolowich was made October 4, 1929. It was secured by 7,906 shares of preferred and an equal number of shares of common stock of the Detroit Housing Corporation. According to the report of certified public accountants filed with the bank, the book value of the pledged stock on June 30, 1929, was $96,265. No evidence was introduced to show that the book value was not the actual value. The

stock was sold in units of one share of preferred and one share of common stock. Mr. Kolowich testified that he paid as low as $6 per unit and as high as $12.50 for the stock. At the lower price the stock would be worth $47,436 and at the higher one $98,825. The stock was sold by the receiver of the bank on February 20, 1931, for $9,626. This sale took place almost 17 months after the beginning of the depression. Mr. Riopelle, a former director of the State Bank of America, testified that Mrs. Kolowich had made and repaid previous loans from the bank and when the $24,000 credit was extended to her, he felt that the bank was amply protected by the collateral offered and the responsibility of Mrs. Kolowich. The fact that the proceeds of the loan were used to bolster up the credit of a private bank in which Mrs. Kolowich was a partner does not prove any fraud. She had a right to raise money in a legal manner to help her husband. Her credit being good and the security being adequate, Mrs. Kolowich would be liable for conspiracy to defraud only upon a showing that she knew Mr. Kolowich had reached his limit, that he was obtaining these additional funds by improper means, and that she intended to assist him in the fraudulent scheme. The burden was on plaintiff to prove fraud on her part, since she had no fiduciary duty to the bank, but no evidence of Mrs. Kolowich's knowledge or intentions was introduced. We do not believe that on this record, defendant Mrs. Kolowich should be held liable in tort. The judge made no finding of fraud as a matter of fact, but in denying the motion for a new trial, he stated that he found defendants guilty of fraud as a matter of law. The judgment against Mrs. Kolowich in tort should be reversed. Her attorneys concede that her sole liability would

be in assumpsit, but a judgment in assumpsit cannot be rendered in the present action.

The declaration is rather crudely drawn and seeks a judgment against John C. Finan, Irene G. Kolowich and George J. Kolowich, by reason of conspiracy, concealment and unlawful acts of each of them. It makes the direct charge that George J. Kolowich, a director and president of the bank, borrowed $24,000 and other sums in excess of the maximum amount that he could legally borrow under Act No. 66, § 25, Pub. Acts 1929 (3 Comp. Laws 1929, § 11922), by inducing his wife to obtain a loan from the bank. It also charges Mrs. Kolowich with conspiring with her husband to defraud the bank. While the liability of Kolowich for fraud has been established, the charge of conspiracy to defraud against Mrs. Kolowich has not. The case was dismissed as to defendant Finan.

The judgment against Mr. Kolowich is affirmed, that against Mrs. Kolowich is reversed, and the case remanded to the trial court to enter a judgment of not guilty against Mrs. Kolowich. Plaintiff will recover his costs from Mr. Kolowich and Mrs. Kolowich will be entitled to costs from plaintiff.

WIEST, C. J., and BUSHNELL, SHARPE, POTTER, CHANDLER, and NORTH, JJ., concurred. FEAD, J., took no part in this decision.