HOLDEN v. LASHLEY-COX LAND CO.

1. CORPORATIONS—DIRECTORS—BURDEN OF SHOWING FAIRNESS IN DEALINGS WITH CORPORATION.

Directors of a corporation have the burden of showing that their dealings with the corporation were fair and honest, when such dealings are questioned.

2. SAME—DIRECTORS AS FIDUCIARIES.

Directors of a corporation stand in a fiduciary position and their dealings with it are required to be on the basis of good faith.

3. SAME—STOCKHOLDERS' SUITS—FINDING OF COURT—EVIDENCE— OPERATION FOR SOLE BENEFIT OF OFFICERS.

In minority stockholders' suit against corporation and its officers and directors, evidence supported conclusion of trial court that the corporation was being operated for the sole benefit of the individual defendants and required a like finding by Supreme Court on de novo review, where it appears one officer occupied a company-owned house rent free, another obtained a house at substantially less than its value and another had charged a collection fee for cash portion of purchase price made upon sales of realty.

4. SAME—CONSTRUCTIVE FRAUD—EVIDENCE.

Minority stockholders' claim of constructive fraud on part of defendant officers held, established by the preponderance of evidence showing that company's assets were stated in reports to plaintiffs as being greatly in excess of assets reported to State.

5. SAME—DUTY OF DIRECTORS AND OFFICERS TO WIND UP AFFAIRS.

It is the duty of directors and officers to wind up the affairs of the corporation where it is apparent that their method of conducting it is such that it could not accomplish the purposes for which the corporation was organized.

6. SAME — CONSTRUCTIVE FRAUD — MINORITY STOCKHOLDERS — RE-
   CEIVERS—DISSOLUTION—DISTRIBUTION OF ASSETS.
   Where officers and directors fail to conduct affairs of corpora-
       tion so as to permit it to accomplish the purposes for which
       it was organized and make improper payments to themselves,
       they thereby commit a breach of trust amounting to a con-
       structive fraud and entitle minority stockholders to appoint-
       ment of a liquidating receiver, dissolution of the corporation
       and distribution of assets to the stockholders.

7. SAME—FRAUD—REMEDY OF MINORITY STOCKHOLDERS.
   Fraud of majority stockholders, one family, who voted away cor-
       porate assets to themselves entitled minority to call upon court
       of equity without first presenting matter to the directors.

Appeal from Wayne; Toms (Robert M.), J. Sub-
mitted October 10, 1946. (Docket No. 45, Calen-
dar No. 43,370.) Decided January 6, 1947.

Bill by James S. Holden and others against
Lashley-Cox Land Company, a Michigan corpora-
tion, and others to liquidate defendant corporation,
for a receiver, and for other relief. Decree for
plaintiffs. Defendants appeal. Affirmed.

*Schmalzriedt, Frye, Granse & Frye,* for plaintiffs.

*Seth J. Wicker,* for defendants.

BUSHNELL, J.   The original stockholders of de-
fendant Lashley-Cox Land Company, except for
those holding a few shares, were the late Harry M.
Nimmo, J. C. Lashley and defendant Edgar C. Cox.
In 1932, Nimmo borrowed $20,000 from the Guardian
National Bank of Commerce and pledged 150 shares
of Lashley-Cox Land Company stock as collateral
security. As additional security for this loan the
bank required a guarantee of payment from James S.
Holden, John S. Newberry, Murray W. Sales and

Frederick M. Alger, Sr. The Nimmo loan was paid by the guarantors and the stock, which had been pledged as collateral, subsequently came into their possession. At the time plaintiffs filed their bill of complaint they owned shares of common stock of the defendant company as follows:

|  | Shares |
|---|---|
| Truman H. Newberry, Executor of the Estate of John S. Newberry, Deceased | 37-½ |
| James S. Holden | 37-½ |
| Murray W. Sales | 37-½ |
| Mary E. A. Murphy | 12-½ |
| Frederick M. Alger, Jr. | 12-½ |
| Frances Alger Boyer | 12-½ |
| Total | 150 |

Plaintiffs alleged fraud and misrepresentation on the part of the defendant corporate officers and asserted that they were exercising control of the corporation to plaintiffs' detriment, and that the annual reports filed with the State of Michigan on behalf of the corporation were different from those furnished plaintiffs. They also asserted that the assets of the corporation "were steadily being dissipated," no dividends had been earned or declared for more than six years, and that the corporation was being operated by the individual defendants, who were its officers and directors, solely for their own benefit. The plaintiffs sought an accounting, a determination of insolvency, the appointment of a receiver, the liquidation of the corporate assets, and the distribution of the proceeds thereof to the stockholders.

The matter was referred to a circuit court commissioner who, after making findings of fact and law, recommended that plaintiffs' bill of complaint be dismissed. Plaintiffs filed objections to the report of the commissioner, which were first considered by

Honorable Lester M. Moll, who retired from the circuit bench before determining the matter. The cause was then assigned to the Honorable Robert M. Toms, circuit judge, who, after hearing counsel for the respective parties and attempting a settlement of their dispute, filed a written opinion, in which he found substantially for the plaintiffs on all their allegations and entered a decree dissolving the corporation and appointing a liquidating receiver. In this decree, defendant Bruce E. Cox was ordered to pay to the corporation the sum of $2,385; defendant Amelia E. Cox was ordered to pay the sum of $850; and defendant Edgar C. Cox, was ordered to pay the sum of $2,887.50.

With respect to plaintiffs' claim that the defendant officers of the corporation were guilty of overreaching and of operating the company for their sole benefit, the trial court found as follows:

"Bruce E. Cox, secretary and treasurer of defendant corporation, occupied a house belonging to the company, located at 11635 Faust avenue, from July 24, 1938 to December of 1942. Similar houses owned by the company and adjacent thereto rented during this period for $45 per month. He paid no rental to the company during all of this period. No corporate resolution authorizing this occupation is shown and while Mr. Cox, Sr., testified that his son rendered legal services in exchange for this rental, no evidence of any legal service performed for the company was offered at the trial. The court therefore finds that Bruce E. Cox should be required to make restitution to the company by paying for the reasonable value of such rent, namely, $2,385.

"In 1939 Bruce E. Cox claims to have loaned the company for building purposes the sum of $11,100. Between that date and December of 1942 the company apparently repaid all but $6,150 for which amount a check was given to him. He immediately indorsed this check to his mother, Amelia E. Cox, one

of the defendant officers and directors, who, in turn, gave it back to the company for a deed to the property known as 11635 Faust avenue, a house owned by defendant corporation. This land and building had cost the corporation $6,500 at an early date, and at the time of this transfer there was a rising real estate market in the Detroit area. The testimony of defendants (*sic*) is to the effect that this property was well worth $7,000 at the time of the transfer. The court is of the opinion that the burden of showing the fairness of this transaction is on the defendants, and having failed in this regard that defendant, Amelia E. Cox, should be required forthwith to make restitution to the corporation in the sum of $850.

"In relation to the foregoing conveyance by the corporation to Amelia E. Cox, Edgar C. Cox, president, charged the corporation a sales commission of five per cent. on $6,150 and also a collection fee of five per cent. It is apparent that this transaction was not a sale in the ordinary sense, yet giving it its broadest construction and allowing Edgar C. Cox a sales commission of five per cent. upon the sale price, there was no justification or practice in this area which would permit an additional five per cent. collection fee on a cash sale, and Edgar C. Cox shall forthwith pay to the corporation the sum of $307.50, being the collection fee improperly taken by him in this transaction.

"Defendants complain that Mr. Cox was receiving very little compensation for the work which he was doing on behalf of the company, but the record shows that in certain years there was very little business, for which there should be relatively smaller compensation. For instance, in the year 1941, although the total revenue received by the company was $3,223.40, of this amount $2,478.65 was paid to Edgar C. Cox for sales commission, collection fees and office expense, and $800 for attending sales of the State Land Board.

"In this same connection, from the balance sheet and operating statement of the company for 1944

which was offered in evidence in the case in March,
1944, and received by the court, it appears that the
sales made during the year 1944 aggregated $155,350,
with revenues for the year of $28,735.37 and ex-
penses of $28,338.09, the company's gain for the year
being the small sum of $397.28. The reason for this
is apparent, as it appears that while the company
only made a gain of $397.28, Edgar C. Cox paid him-
self sales commissions of $8,242.50 and a collection
fee of $7,655.93 or a total of $15,898.43.

"Of the collection fee of $7,655.93, the court finds
as follows:

"At least $51,600 represented cash payments or
down payments, upon which no practice of the De-
troit Real Estate Board or in the Detroit area, so
far as the record shows, would justify five per cent.
collection fee of this amount, so this collection fee of
$7,655.93 should be reduced to cover only the collec-
tions made on installment payments, and Edgar C.
Cox shall forthwith pay to the corporation, $2,580,
being the refund of the five per cent. collection fee on
the cash payments or down payments made on
sales."

In the face of plaintiffs' charge the burden was
upon the individual defendants to show that their
dealings with the corporation were fair and honest.
As directors, they stood in a fiduciary position and
their dealings with the corporation were required to
be on the basis of good faith. *Barber* v. *Kolowich,*
283 Mich. 97, 104, and *Wiseman* v. *Musgrave,* 309
Mich. 523.

In our *de novo* review of the evidence, we agree
with the conclusions reached by the trial judge, and,
likewise, find that the corporation was being oper-
ated for the sole benefit of the individual defendants
who were its directors and officers.

The record is conclusive that from 1937 to 1941 de-
fendants gave false information to plaintiffs respect-

ing the financial condition of the corporation. The company's assets, as stated in the reports to plaintiff stockholders, were so greatly in excess of the assets reported at the same time to the State that plaintiffs were lulled into a false sense of security. These false representations amounted to constructive fraud. The accounting methods employed by the defendants were neither fair to the company and its stockholders nor were they accurate in fact. The conclusions reached by the trial judge are amply supported by the record, and the fraud charge is established not by presumption or inference, as claimed by appellants, but by a preponderance of the evidence. *Fahey* v. *Pell,* 310 Mich. 280.

It is apparent that a corporation so conducted could not accomplish the purposes for which it was organized, and it was therefore the duty of its directors to wind up its affairs. *Miner* v. *Belle Isle Ice Co.,* 93 Mich. 97 (17 L. R. A. 412). Their failure to do so, coupled with improper payments to themselves, was a breach of trust imposed in them by the stockholders, and, hence, a constructive fraud. Plaintiff stockholders are entitled to equitable relief to the extent of the appointment of a liquidating receiver, a dissolution of the corporation, and distribution of the assets to its stockholders. *Edison* v. *Fleckenstein Pump Co.,* 249 Mich. 234.

Appellants' contention that such relief cannot be granted upon the complaint of minority stockholders unless it is first presented to the directors, is fully answered in *Miner* v. *Belle Isle Ice Co., supra,* 111, as follows:

"Where the majority of stock of a corporation was held by one family, who voted away the corporate profits for salaries, the minority may call upon a court of equity to remedy the fraud. *Sellers* v. *Phoenix Iron Co.,* 13 Fed. 20."

See, also, *Witter* v. *LeVeque,* 244 Mich. 83; *Burch* v. *Norton Hotel Co.,* 261 Mich. 311; and *Ayres* v. *Hadaway,* 303 Mich. 589.

The decree of the trial court is affirmed, with costs to appellees.

CARR, C. J., and BUTZEL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.