FILL BUILDINGS, INC v ALEXANDER HAMILTON LIFE
INSURANCE COMPANY OF AMERICA

Docket No. 55579. Argued March 5, 1975 (Calendar No. 11).—Decided
May 7, 1976.

Fill Buildings, Inc., brought an action to collect unpaid rent from
defendant Alexander Hamilton Life Insurance Company of
America, the successor to Wayne National Life Insurance
Company, which had entered into a lease agreement with Fill
Buildings, Inc. Dr. Leon Fill was the principal ˙stockholder,
secretary, and a director of Wayne National and the sole
shareholder, president and a director of Fill Buildings. Defend-
ant sought to avoid liability under the lease contending, on the
basis of Dr. Fill's relationship with each corporation, that it
was unfair to Wayne National. The Wayne Circuit Court, Neal
Fitzgerald, J., found for defendant, concluding that plaintiff had
failed to surmount its burden of establishing the fairness of the
contract. The Court of Appeals, V. J. Brennan and Walsh, JJ.
(Bronson, P. J., dissenting), affirmed (Docket No. 14510). Plain-
tiff appeals. *Held:*

1. A contract between a corporation and one of its officers or
directors must be fair and in the interest of the corporation,
and when its validity is questioned the statute (formerly MCL
450.13[5]; MSA 21.13[5], currently MCL 450.1546; MSA
21.200[546]) puts the burden of proving fairness on the officer
or director asserting validity. Given an instance of alleged
enrichment of a director at corporate expense, the statutory
burden resting on the director to establish fairness requires not
only a showing of "fair price" but also a showing of the fairness
of the bargain to the interests of the corporation; only when a
convincing showing is made in both respects can "fairness"
under the statute be said to have been established.

2. Even though it may be said that the lessor corporation was
entitled to a profit and that the lease for a fair price, the proofs
that entry into the lease served the interests of the lessee
corporation were unconvincing. The lessee, an insurance com-

pany, had been warned against over-expansion by the state insurance bureau because of a "surplus drain" not long before the lease was made, and its troubles eventually led to collapse of the corporation. The long-term lease in suit was a form of expansion.

3. On the state of the record it cannot be said that the trial judge's application of the law to the facts, his conclusion that the "fairness" of the contract was not established by plaintiff, was clearly erroneous.

Chief Justice Kavanagh, Justice Levin concurring, dissented: From a review of the record the lease was as fair as most leases to the contracting parties, but the issue of fairness does not dispose of this case. The statute (formerly MCL 450.13[5]; MSA 21.13[5], currently MCL 450.1546; MSA 21.200[546]) renders even unfair contracts between a corporation and one of its officers or directors affirmable at the option of the entity treated unfairly. The case should be remanded to the Court of Appeals for consideration of the ratification issue.

Affirmed.

OPINION OF THE COURT

1. CORPORATIONS—DIRECTORS—CONTRACTS—FAIRNESS.

A contract between a corporation and one of its officers or directors must be fair and in the interest of the corporation.

2. CORPORATIONS—DIRECTORS—CONTRACTS—FAIRNESS—BURDEN—
    STATUTES.

When the validity of a contract between corporations having common directors is questioned, the corporation act puts the burden of proving the fairness of the contract on the party asserting its validity (MCL 450.13[5], 450.1546).

3. CORPORATIONS—CONTRACTS—DIRECTORS—ENRICHMENT—FAIRNESS—
    BURDEN OF PROOF.

In an instance of alleged enrichment of a director at corporate expense by a contract, the burden resting on the director to establish fairness requires not only a showing of "fair price" but also a showing of the fairness of the bargain to the interests of the corporation; only when a convincing showing is made in both respects can "fairness" be said to have been established under the statute which puts the burden of proving the validity of a contract between corporations having common directors on the corporation asserting the validity of the con-tract (MCL 450.13[5], 450.1546).

4. CORPORATIONS—DIRECTORS—CONTRACTS—FAIRNESS—BURDEN.

A plaintiff lessor corporation did not meet its burden of showing fairness of a five-year lease to the interests of the lessee corporation, which had a director in common with the plaintiff, where the proofs showed that the lessee corporation, an insurance company, was in financial trouble, had been warned by the state insurance bureau against over-expansion because of a "surplus drain", and later collapsed, and where no proofs were adduced on the necessity of the lease to the lessee, whether a one-year lease would have been wiser, whether the lessee was in a position to take on additional space in view of its financial condition, whether it was able to pay the rent, what its five-year forecast was, and whether any of these questions had been answered by the lessee's board of directors (MCL 450.13[5], 450.1546).

DISSENTING OPINION

KAVANAGH, C. J., and LEVIN, J.

5. CORPORATIONS—DIRECTORS—CONTRACTS—RATIFICATION.

*An unfair contract between a corporation and one of its officers or directors is affirmable at the option of the entity which is treated unfairly (MCL 450.1546; MSA 21.200[546]).*

*Gerald J. Gattorn (Arthur J. Tarnow,* of counsel) for plaintiff.

*Butzel, Long, Gust, Klein & Van Zile* (by *John B. Weaver* and *Chester E. Kasiborski, Jr.)* for defendant.

FITZGERALD, J. Plaintiff Fill Buildings brought this action to collect some $39,000 in unpaid rent from defendant Alexander Hamilton, the successor to Wayne National Life Insurance Company, which had entered into a lease arrangement with Fill Buildings. Dr. Leon Fill was the principal stockholder, secretary, and a director of Wayne National and the sole shareholder, president, and a director of Fill Buildings. On the basis of Dr. Fill's relationship with each corporation, Alexander Hamilton sought to avoid liability under the

lease, contending that it was "unfair" to Wayne National under MCLA 450.13(5); MSA 21.13(5).[1] The trial court found for Alexander Hamilton, concluding that Fill Buildings had failed to surmount its burden of establishing the "fairness" of the contract. The Court of Appeals, in an unpublished per curiam opinion, Judge BRONSON dissenting, affirmed, concluding that the trial court findings were not "clearly erroneous".

We granted leave to appeal[2] and affirm.

I

On appeal plaintiff presses two contentions. It is first argued that plaintiff did in fact succeed in surmounting its burden of proof in establishing that the lease agreement between itself and defendant's predecessor, Wayne National, was fair under MCLA 450.13(5); MSA 21.13(5). Plaintiff next contends that, in any event, the lease agreement was ratified by the acquiescence of the board of directors of Wayne National and by the board of directors of defendant Alexander Hamilton.[3] Central to the issues tried and framed upon appeal is the following language of MCLA 450.13(5); MSA 21.13(5):

"No contract of any corporation made with any director of such corporation or with a partnership or other group or association of which any such director shall be a member or with any other corporation of which such director may be a member or director and no contract between corporations having common directors shall be invalid because of such respective facts alone. *When the*

[1] Superseded by 1972 PA 284, §§ 545, 546; MCLA 450.1545–450.1546; MSA 21.200(545)–21.200(546), effective January 1, 1973.

[2] 392 Mich 752 (1974).

[3] Other issues were raised during the course of these proceedings but are not raised in this Court.

*validity of any such contract is questioned, the burden
of proving the fairness to the contracting parties of any
such contract shall be upon such director, partnership,
other group or association, or corporation who shall be
asserting the validity of such contract."* (Emphasis sup-
plied.)

## II

In 1966 the headquarters of Wayne National
were located on several floors of a building owned
by plaintiff. A principal witness at trial was Alex
Ritchie, the assistant secretary of Wayne National,
who signed the lease which is the subject of this
litigation. He indicated that he was authorized to
sign the lease in January 1967 because the presi-
dent of Wayne National wished to provide in-
creased space in the headquarters building for
increasing numbers of agency personnel and to
consolidate the officers of the corporation on an-
other floor of the building. He also speculated that
the corporate officers wanted the new space in the
headquarters building in order to terminate leases
for corporate offices in less convenient locations.

The testimony of Alex Ritchie also indicated,
however, that his signing of the lease for Wayne
National was not accomplished in accordance with
the provisions of the corporate bylaws.[4] Moreover,

[4] The corporate bylaws stated:

*"Section II. Contracts.* The Board of Directors may authorize any
officer or officers, agent or agents, employee or employees to enter
into any contract or other instrument on behalf of this corporation,
and such authority may be general or confined to special instances.
When the execution of any contract, conveyance, or other instrument
has been authorized without specification of the executing officers, the
President and any other officer of this corporation may execute the
same in the name and behalf of this corporation and may affix the
corporate seal thereto. Except as herein provided or as authorized by
the Board of Directors, no officer, agent, or employee shall have any
power or authority to bind this corporation by any contract or
engagement, or to pledge its credit or to render it liable, for any
purpose or for any amount."

he testified that the state insurance department
had warned the company against over-expansion
in the summer of 1966, noting that there was a
"surplus drain" caused by the rate of acquisition
of new business. The problems noted in 1966 ulti-
mately led to the resignation of corporate officers,
including Dr. Leon Fill, direct supervision of corpo-
rate operations by the state insurance department,
and corporate collapse in early 1967.[5] Plans for
Wayne National's entry into the lease relationship
were laid against this background in the summer
of 1966. The lease was signed on January 4, 1967.

Other testimony introduced at trial indicated
that the premises leased to Wayne National had
been rented to a 20-year tenant as a warehouse
before it was remodeled, at an expense of $26,000
to Fill Buildings, for Wayne National. The former
tenants had been charged a rental of $400 per
month. Under the new lease Wayne National was
to pay $875 per month for 2,600 square feet of
rental space—an equivalent of $4 per square foot
of rental space. Over the five year term of the
lease Fill Buildings stood to recoup, in increased
rental, slightly more than the amount invested in
renovations. Plaintiff's expert witness, noted to be
of dubious qualification by the trial court, testified
to the effect that a rental of $4 per square foot for
the rental premises was reasonable compared to
similar properties in the downtown Detroit area.

Cognizant of the foregoing and other record
testimony, the trial court in its opinion drew the
following conclusion:

"[T]he Michigan Department of Insurance was con-

Alex Ritchie testified he received no authorization from the board
of directors.

[5] Record testimony indicated that Dr. Fill resigned in February
1967, effective as of December 12, 1966. Other resignations followed
and the insurance department intervened in April 1967.

ducting an extensive investigation of the Wayne Insurance Co., which had an inadequate capital position and was undercapitalized. This was known to the Directors of the company. On April 24, 1967, the Insurance Department declared that the company's capital was impaired by over a million dollars. This, of course, raises the question as to whether this was a proper time for the company to take on additional space or to enter into five-year leases at greatly increased rentals.

"Plaintiff points with pride to the fact that he invested $26,000.00 in remodeling the leased quarters to suit the Insurance Company, and, to do so, he had to remove an old tenant who was paying $400.00 per month for the space. The rent charged to the Insurance Company was $875.00 per month which would cover the rent and amortize the $26,000.00 investment of Dr. Fill in five years, who, then obtained, presumably, the return of the remodeled quarters with the alterations and improvements fully paid for.

"There was no testimony of any shopping around for cheaper quarters for the limping company, or why, under the circumstances, a one year lease would not have sufficed and saved the company money, and heaven knows, they needed it, or why the Directors of the company were not informed and given a chance to express their views, and perhaps suggest other procedures that would be acceptable under the circumstances that existed. Had the proper procedures been followed, Dr. Fill would not, perhaps, have been able to remodel his building and recover the cost in five years. There is not one word of testimony of explanation in the record to indicate the reason neither Board of Directors was consulted, before this self-serving deal was completed, nor why it was necessary to have the agreement by the Insurance Company signed by an Assistant Secretary alone, who, by the way, worked immediately under the plaintiff, Dr. Fill. The only suggestion made to explain these strange facts, no meetings, no minutes, no records of any kind is that 'everyone knew Doc Fill owned the building and the Directors passed the new quarters every day.' This explanation does not satisfy this court as adequate or satisfactory. No ratification can be de-

duced from such facts as these. The plaintiff completely failed to sustain his burden of proof, as to the fairness of the transaction to the Insurance Company which inured to his own personal benefit."

## III

In rendering its conclusion set forth above as the fairness of the lease contract, the trial court appropriately cited the following language from *Baker v Hellner Realty Co,* 265 Mich 625, 631; 251 NW 793 (1933), defining the "fairness" requirement.

"[O]fficers of a corporation may deal with it only in good faith. Such contracts must be *fair and in the interest of the corporation* and all of the material facts must be made known to the directors. Any unfair advantage taken by an officer or director may be the basis for an attack upon the validity of the contract. See *Barnes v Spencer & Barnes Co,* 162 Mich 509 (139 Am St Rep 587) [1910]; *Quinn v Quinn Manfg Co,* 201 Mich 664 [1918]; *Old Mortgage & Finance Co v Pasadena Land Co,* 241 Mich 426 [1928]; *Patrons' Mutual Fire Ins Co v Holden,* 245 Mich 493 [1929]. Under the provisions of Act No 327, Pub Acts 1931, § 13, subd 5. [MCLA 450.13(5); MSA 21.13(5).]

" 'When the validity of any such contract is questioned, the burden of proving the fairness to the contracting parties of any such contract shall be upon such director, partnership, other group or association, or corporation who shall be asserting the validity of such contract.' " (Emphasis supplied.)

See, also, *Veeser v Robinson Hotel Co,* 275 Mich 133; 266 NW 54 (1936);[6] *Barber v Kolowich,* 283

---

[6] *Veeser v Robinson Hotel Co* has been the subject of commentary noting that that case adds to the statutory "fairness" requirement the requirement that an insider-director dealing with his corporation must have his dealings approved by a "disinterested quorum" of the other directors to validate such dealings. *See* Comment, 34 U Det LJ

Mich 97; 277 NW 189 (1938); *Holden v Lashley-Cox Land Co,* 316 Mich 478; 25 NW2d 590 (1947); *Kukla v Perry,* 361 Mich 311; 105 NW2d 176 (1960). Given an instance of alleged director enrichment at corporate expense such as in this case, the burden to establish fairness resting on the director requires not only a showing of "fair price" but also a showing of the fairness of the bargain to the interests of the corporation.[7] Only when a convincing showing is made in both respects can "fairness" under the statute be said to have been established.

We are inclined to agree with Fill Buildings' position that that corporation was entitled to make a profit on its lease and that a "fair price" for the leasehold agreement was established. The costs of extensive renovations and the thrust of expert testimony adduced at trial support this conclusion. The proofs respecting the showing that entry into the lease served the interests of Wayne National are, however, unconvincing. Evidence adduced at trial indicated that Wayne National was a corporation in trouble. The corporation had been warned against over-expansion. Yet here we have entry into a long-term lease *(i.e.,* expansion)

42 (1956), and *Miner v Belle Isle Ice Co,* 93 Mich 97; 53 NW 218 (1892). *Cf.* Comment, 51 Mich L Rev 705 (1953). The relationship between the disinterested quorum requirement and the statutory scheme *(i.e.,* "fairness") is unsettled. Since the disinterested quorum, argument was not raised in this case, we do not attempt to define this relationship. It can be noted, however, that there would appear to be no purpose for the disinterested quorum requirement under MCLA 450.1545; MSA 21.200(545) since that statute looks not to form but to justification in terms of what is "fair and reasonable" to the corporation (see MCLA 450.1545[a]), and considers the role of other directors and shareholders (see MCLA 450.1545[b] and [c]).

[7] At oral argument in this Court defense counsel demonstrated this principle admirably in discussion with a member of the Bench. He hypothesized that the sale of widgets by an insider to a corporation would not be "fair", even though the price were fair, if there was no corporate purpose furthered by the acquisition of widgets.

at a time when the corporate future was in question. Only one witness testified briefly as to the reasons for entry into the lease agreement and he was not a principal party to the corporate decision-making process. As defendant Alexander Hamilton states in its brief:

"The real questions in this case were: Was the lease necessary? Was the company in a position to take on additional space at the time, given its critical financial position? Was the company able to pay the rent at the time? What was the company's five-year forecast? Would it have been wiser to enter into a one-year lease? And most importantly, were any of these questions or similar questions answered by the Wayne National Board of Directors?"[8]

It was necessary that proofs on these points be adduced to rebut the statutory presumption[9] of insider enrichment at corporate expense.

Perhaps, as plaintiff Fill Buildings suggests, defendant, standing in the shoes of Wayne National, is attempting to avoid legitimate responsibilities of Wayne National under the leasehold contract. We can only note that plaintiff did not produce evidence which might have shed more light on Wayne National's legitimate "interest" in the contract.[10] The trial judge correctly perceived the law. He viewed the witnesses. On the state of this record we cannot say that his application of law to the facts—his conclusion that the "fairness" of the contract was not established by plaintiff and that there was no ratification of the contracts—was

---

[8] Defendant-appellee's brief, p 10.

[9] The term "presumption" is used advisedly in describing the legislative decision to shift the burden of proof.

[10] The means of producing additional witnesses was available to plaintiff. The ex-officers of Wayne National were friends of Dr. Fill. Dr. Fill himself might have appeared as a witness.

clearly erroneous. GCR 1963, 517.1; GCR 1963, 859(2).

Affirmed. Costs to appellees.

WILLIAMS and COLEMAN, JJ., concurred with FITZGERALD, J.

LINDEMER and RYAN, JJ., took no part in the decision of this case.

KAVANAGH, C. J. *(dissenting).* I disagree with my brother in two respects. First the statute's nebulous language "burden of proving the fairness to the contracting parties" does not provide a standard of review other than the substitution of the reviewing court's assessment of the evidence for that of the trial court. I am satisfied from my review of the record that this lease was as "fair" as most leases to the contracting parties. The lessor leased space to the lessee at a rate that represented the rate a stranger was paying for it plus an amount necessary to amortize the cost of improvements the lessee specified over the life of the lease.

There is no suggestion that anyone was hoodwinked in the transaction and I am convinced the plaintiff did all that was reasonably to be expected of it to establish its right to the rent.

Next I disagree that the proof or failure of proof of "fairness" disposes of this case.

I do not read this statute as having the effect of rendering totally void a contract between a corporation and a director even if the contract be deemed "unfair".

I believe the only legitimate effect which may be given this statute is to hold it renders even "unfair" contracts affirmable at the option of the entity treated "unfairly".

The issue of ratification is indeed a viable and separate issue which was not addressed by the Court of Appeals.

We should at least return the case to that Court for consideration of that issue.

LEVIN, J., concurred with KAVANAGH, C. J.